902 P.2d 1354

**COMMERCIAL UNION INSURANCE COMPANY, a foreign corporation, Plaintiff–Appellant,**

v.

**LEWIS AND ROCA, an Arizona general partnership, Defendant–Appellee.**

**No. 1 CA–CV 93–0227.**

Court of Appeals of Arizona, Division 1, Department A.

Feb. 21, 1995.

Reconsideration Denied March 20, 1995.

Review Denied Sept. 26, 1995.*

---

* Corcoran, J., of the Supreme Court, did not par-ticipate in the determination of this matter.

**252**

Robbins & Green, P.A. by William H. Sandweg, III, Phoenix, for appellant.

Broening, Oberg & Woods by Terrence P. Woods, Michael M. Haran, Phoenix, for appellee.

## OPINION

TOCI, Judge.

In this appeal we must decide, for purposes of commencement of the statute of limitations, when a cause of action accrues for an attorney's negligent advice.

In 1982, the Lewis and Roca law firm provided its client, Commercial Union Insur-

ance Company ("Commercial Union"), with a legal opinion. The opinion concluded that, because of a policy exclusion, Commercial Union's insured, Maxon Construction Company ("Maxon"), was not entitled to liability coverage for a lawsuit against Maxon for negligent construction of certain townhouses. In reaching this conclusion, however, Lewis and Roca overlooked an Arizona Supreme Court decision (the *"Federal Insurance"* decision) holding a similar policy exclusion unenforceable.[1]

■ After Commercial Union denied coverage and later refused a settlement demand for the policy limits, judgment was taken against Maxon. In 1987, after Maxon's bankruptcy trustee sued Commercial Union for breach of contract and bad faith refusal to settle (the "coverage case"), Commercial Union learned of Lewis and Roca's negligence. In 1991, when Commercial Union settled the coverage case, it sued Lewis and Roca for legal malpractice.[2] The trial court dismissed the suit, ruling that it was barred by the statute of limitations.

This appeal raises the following issues: (1) what sort of harm or damage must a plaintiff sustain before a cause of action accrues for legal malpractice; and (2) before a cause of action accrues, must the plaintiff know or have reason to believe that the harm or damage was caused by the attorney's negligence? The answer depends on the scope of the discovery rule.

■ In resolving these issues, we hold that a cause of action for legal malpractice accrues when the client both: (1) has sustained appreciable, non-speculative harm or damage as a result of such malpractice and (2) knows, or in the exercise of reasonable diligence should know, that the harm or damage was a direct result of the attorney's

---

1. Solely for the purpose of its motion for summary judgment in the trial court, Lewis and Roca conceded that it was negligent in rendering a coverage opinion overlooking *Federal Insurance Co. v. P.A.T. Homes, Inc.*, 113 Ariz. 136, 547 P.2d 1050 (1976), *disapproved by State Farm Mut. Auto. Ins. Co. v. Wilson*, 162 Ariz. 251, 258, 782 P.2d 727, 734 (1989).

2. Legal malpractice is defined as the "failure of an attorney to use such skill, prudence, and

diligence as lawyers of ordinary skill and capacity commonly possess and exercise in performance of tasks which they undertake, and when such failure proximately causes damage it gives rise to an action in tort." *Black's Law Dictionary* 959 (6th ed. 1990). In this opinion, we use the terms "attorney malpractice" and "attorney negligence" synonymously with the term "legal malpractice."

negligence. Thus, we hold that the discovery rule applies not only to the discovery of negligence, but also to discovery of causation and damage.

Here, Commercial Union knew of Lewis and Roca's negligence when Commercial Union's counsel in the coverage case discovered that Lewis and Roca had overlooked the *Federal Insurance* decision. Nevertheless, Commercial Union's counsel thought *Federal Insurance* could be distinguished. Although Commercial Union sustained appreciable damage when it incurred costs for attorneys' fees in the coverage suit, until the trial court relied on *Federal Insurance* to deny Commercial Union's motion for summary judgment, Commercial Union had no reason to know that such defense costs were the direct result of Lewis and Roca's negligence. Thus, because the trial court's denial of summary judgment in the coverage case occurred less than two years before Commercial Union's tolling agreement with Lewis and Roca, Commercial Union's malpractice claim was timely.

### I. FACTS AND PROCEDURAL HISTORY

This case was decided on a motion for summary judgment with the following stipulated statement of facts. Because the facts are not disputed, our function simply is to determine whether, as a matter of law, the defendant was entitled to summary judgment dismissing the complaint as barred by the statute of limitations.[3]  *See*  Ariz.R.Civ.P. 56(c).

Commercial Union provided liability insurance coverage to Maxon. In April of 1982, Maxon was sued by Delores A. Pruitt and others ("Pruitt") for negligence and breach of contract in the construction of certain townhouses in Pima County. Maxon's attorney tendered the defense of the suit to Commercial Union.

In July 1982, a Lewis and Roca attorney rendered an opinion to Commercial Union that certain policy exclusions precluded coverage for Pruitt's suit against Maxon. Unknown to Commercial Union, in rendering the opinion the attorney negligently overlooked *Federal Insurance,* which held an identical policy exclusion invalid because of ambiguity. After receiving the attorney's advice, Commercial Union notified Maxon's attorney that Commercial Union was denying coverage.

In February 1984, Maxon's attorney wrote to Commercial Union, advising it that Maxon's case was in trial and that Pruitt had offered to settle for the policy limits of $100,-000. The case, however, did not settle, and on March 22, 1984, judgment was entered in favor of Pruitt on a jury verdict of $880,700 against Maxon. Not long after, Pruitt filed an involuntary petition in bankruptcy against Maxon.

On March 21, 1986, Maxon's bankruptcy trustee filed the coverage case against Commercial Union. The trustee asserted claims for breach of contract and bad faith based on Commercial Union's failure to settle Pruitt's claim within the policy limits. While the coverage case was in litigation, the attorney representing Commercial Union advised Commercial Union, by letter dated August 31, 1987, that the Lewis and Roca attorney had overlooked *Federal Insurance.* The attorney stated in the letter, however, that he thought *Federal Insurance* could be distinguished from the coverage case because of additional provisions in Commercial Union's policy not discussed in *Federal Insurance.*

In early October 1987, Commercial Union filed a motion for summary judgment in the coverage case, seeking a determination that its policy provided no liability coverage to Maxon for Pruitt's claim against Maxon. Maxon's trustee filed a cross-motion for summary judgment in which he argued that *Federal Insurance* was dispositive. Commercial Union attempted to distinguish *Federal Insurance* and further argued that it was not applicable. Commercial Union did not succeed. By minute entry dated December 23, 1987, the court in the coverage case denied

---

**3.** Under Ariz.Rev.Stat.Ann. ("A.R.S.") § 12–542 (1992), an action for malpractice must be filed

within two years of when it accrues.

Commercial Union's motion for summary judgment.

In its minute entry, the court explained that it relied in part on *Federal Insurance* and concluded that Commercial Union's policy provided coverage for property damage resulting from a breach of warranty of workmanlike performance. The court found, however, that there was no coverage for the other theories advanced by Pruitt in her suit against Maxon. The court also denied Maxon's trustee's cross-motion for summary judgment on the ground that there were material questions of fact that precluded a determination that Commercial Union was guilty of bad faith as a matter of law.

On December 21, 1989, less than two years after the date of the minute entry, Commercial Union and Lewis and Roca executed an agreement tolling the statute of limitations (the "standstill" agreement). In the standstill agreement, they agreed that the statute of limitations, to the extent it had not already run, would cease to run on that date. On the date Commercial Union and Lewis and Roca executed the standstill agreement, the coverage case was still pending against Commercial Union in the Pima County Superior Court. It was settled in February of 1990 for $500,000.

## II. DISCUSSION

### A. Introduction

1. **Accrual Does Not Occur Until Client Knows or Should Know That He Has Been Injured By Attorney's Negligent Conduct**

The statute of limitations for attorney negligence begins to run when a cause of action accrues. A.R.S. § 12–542. The determination of when a cause of action accrues on a claim for legal malpractice is governed by the discovery rule. Traditionally stated, this rule provides that a claim for attorney negligence cannot accrue until the client knows or should know of his attorney's negligent conduct. *See Lawhon v. L.B.J. Inst'l Supply, Inc.,* 159 Ariz. 179, 181, 765 P.2d 1003, 1005 (App.1988); *Arizona Management Corp. v. Kallof,* 142 Ariz. 64, 66, 688 P.2d 710, 712 (App.1984); *Amfac Distrib. Corp. v. Miller,* 138 Ariz. 155, 156, 673 P.2d 795, 796 (App.) (*Amfac I*), *approved as supplemented,* 138 Ariz. 152, 673 P.2d 792 (1983) (*Amfac II*).

Seldom noted, however, is an implicit requirement of the discovery rule—that the client also sustain "actual and appreciable" harm as a result of such negligence. *Kallof,* 142 Ariz. at 68, 688 P.2d at 714. Harm is actual and appreciable when it becomes irremedial, *see Amfac I,* 138 Ariz. at 156, 673 P.2d at 796, or, as described in *Amfac II,* "irrevocable." *see* 138 Ariz. at 154, 673 P.2d at 794. If the element of injury or damage is speculative or remote, the cause of action for professional malpractice is premature. *Amfac I,* 138 Ariz. at 156, 673 P.2d at 796.

Accordingly, the limitations period does not commence until actionable negligence exists, that is, negligence that results in appreciable, non-speculative harm to the client. William L. Prosser, *Handbook of the Law of Torts* § 30, at 143 (4th ed. 1971), states, "Nominal damages, to vindicate a technical right, cannot be recovered in a negligence action, where no actual loss has occurred. The threat of future harm, not yet realized, is not enough." (Footnotes omitted.) Consequently, negligence that results in no immediate harm or damage delays accrual of the cause of action until such damage is sustained. *Tullar v. Walter L. Henderson, P.C.,* 168 Ariz. 577, 579, 816 P.2d 234, 236 (App.1991).

Furthermore, a cause of action does not accrue until a "plaintiff discovers or by the exercise of reasonable diligence should have discovered that he or she has been injured by [the] defendant's negligent conduct." *Lawhon,* 159 Ariz. at 183, 765 P.2d at 1007. Thus, unless the client knows, or in the exercise of reasonable diligence should know, that he has sustained actual and appreciable harm from the attorney's conduct, a cause of action for malpractice cannot accrue. In other words, "The cause of action does not accrue until the plaintiff knows or should have known of both the *what* and *who* elements of causation." *Id.*

### 2. Analysis of Commercial Union's Arguments In The Context of *Amfac I* and *II,* and *Tullar*

Although Lewis and Roca's malpractice occurred in 1982, the coverage case was not resolved until 1990. Commercial Union contends that the requirement of irremedial harm established in *Tullar* and *Amfac* should be applied here to delay commencement of the limitations period to the date upon which the coverage suit was resolved. In other words, Commercial Union asserts that, until its liability for bad faith was fixed in 1990, its damages were speculative and unascertainable. Thus, according to Commercial Union, the limitations period did not commence until 1990. We disagree.

In *Amfac,* attorney negligence in naming the proper party plaintiff caused no harm or damage until the dismissal of the client's action was affirmed on appeal. 138 Ariz. at 156, 673 P.2d at 796. Had the dismissal not been affirmed on appeal, the attorney's negligent act might have caused no harm. The apparent damage might have "vanish[ed] with successful prosecution of an appeal and ultimate vindication of the attorney's conduct by an appellate court." *Id.; accord Amfac II,* 138 Ariz. at 154, 673 P.2d at 794. Thus, the *Amfac* cases stand for the proposition that, in the context of litigation, attorney negligence is not actionable until the case in which the malpractice arose is finally resolved.

Although the malpractice in *Tullar* did not arise during litigation as it did in *Amfac,* in *Tullar,* as in *Amfac,* the attorney negligence caused no immediate damage. The Tullars were sellers of real estate who retained an attorney to review sales documents and assist sellers at closing. The attorney negligently allowed the Tullars to accept an unsecured promissory note representing the deferred balance of the sales price. Applying the *Amfac* cases, the court held that the sellers sustained no harm, and the cause of action did not accrue, until the buyers later defaulted in the payment of the promissory note. 168 Ariz. at 579, 816 P.2d at 236. In *Tullar,* because the harm or damage resulting from the attorney's negligence was speculative and uncertain when the malpractice occurred, the cause of action did not accrue until later. *Id.*

The principles in the *Amfac* cases and in *Tullar* do not help Commercial Union's argument that accrual of the cause of action should be deferred until Commercial Union settled the coverage case. Commercial Union's argument on this point mixes two distinct concepts—the occurrence of harm and the extent of damages. *See Bollam v. Fireman's Fund Ins. Co.,* 302 Or. 343, 730 P.2d 542, 546 (1986).[4] Commencement of the statute of limitations "will not be put off until one learns the full extent of his damages." *Wettanen v. Cowper,* 749 P.2d 362, 365 (Alaska 1988); *accord Hunt v. Bittman,* 482 F.Supp. 1017, 1021–22 (D.D.C.1980), *affirmed,* 652 F.2d 196 (D.C.Cir.), *cert. denied,* 454 U.S. 860, 102 S.Ct. 315, 70 L.Ed.2d 158 (1981). Rather, the statute commences to run when the plaintiff incurs "some injury or damaging effect from the malpractice." *Amfac II,* 138 Ariz. at 153, 673 P.2d at 793. Put another way, " 'the cause of action arises ... before the client sustains all, or even the greater part, of the damages occasioned by his attorney's negligence.' " *Kallof,* 142 Ariz. at 68, 688 P.2d at 714 (quoting *Budd v. Nixen,* 6 Cal.3d 195, 98 Cal.Rptr. 849, 852, 491 P.2d 433, 436 (1971)). Thus, accrual of Commercial Union's cause of action against Lewis and Roca was not deferred to the date when Commercial Union finally determined the total amount of its damages in the coverage suit.

### 3. Analysis of Lewis and Roca's Arguments In The Context of *Kallof*

Citing *Kallof,* Lewis and Roca argues that *Amfac I* and *II* do not apply here because the alleged malpractice did not arise in the course of litigation. Although we do not retreat from our holding in *Kallof,* we believe that our statement in that case limit-

---

4. Although harm and damage are synonymous to the extent that they refer to the existence of loss or detriment resulting from negligence, the word damage should not be confused with damages. The latter is a word properly used to "denote a sum of money awarded to compensate the victim of another's negligence." *Bollam,* 730 P.2d at 544 n. 4.

ing the rationale of the *Amfac* cases to malpractice in the course of litigation was erroneous. The *Amfac* cases applied the principle that a cause of action for attorney negligence does not accrue until the plaintiff discovers the negligence and sustains ascertainable harm as a result of that negligence. Contrary to what we said in *Kallof,* that principle applies to all attorney negligence, transactional or otherwise. *See Tullar,* 168 Ariz. at 579, 816 P.2d at 236 (applying the *Amfac* cases to the negligent drafting of sales agreement). It is only in the context of litigation, however, that accrual of the cause of action is deferred until the litigation in which the malpractice arose is finally resolved. *Amfac I,* 138 Ariz. at 156, 673 P.2d at 796; *McKeown v. First Interstate Bank,* 194 Cal.App.3d 1225, 240 Cal.Rptr. 127, 131 (1987).

Lewis and Roca next asserts that Commercial Union's cause of action accrued either in July 1982, when Lewis and Roca overlooked *Federal Insurance,* or in March 1984, when Pruitt's judgment was rendered against Maxon. Again relying on *Kallof,* Lewis and Roca argues that it was one or the other of these events that resulted in damage to Commercial Union and commencement of the running of the statute of limitations. We disagree. *Kallof* is distinguishable from this case.

In *Kallof,* the attorney negligently omitted language from a settlement agreement that would have provided his client with an assignment of master leases of a shopping center and medical building. 142 Ariz. at 66–67, 688 P.2d at 712–13. This negligence immediately deprived the client of the lease rentals from the buildings. The damage was not only immediate and appreciable, it was "readily apparent." *Kallof,* 142 Ariz. at 68, 688 P.2d at 714. In fact, in *Kallof,* the client conceded that it knew of its attorney's negligence more than two years before the filing of the complaint for negligence. *Id.* at 66, 688 P.2d at 712. *Kallof,* then, dealt with actionable negligence, that is, malpractice in which the negligent act caused immediate, appreciable damage. *See id.* at 67, 688 P.2d at 713. *Kallof* thus represents the majority of malpractice cases—those cases where the

damage or injury occurs contemporaneously with the malpractice. *See DeBoer v. Brown,* 138 Ariz. 168, 170, 673 P.2d 912, 914 (1983).

Here, nothing demonstrates that Commercial Union's cause of action accrued either in 1982 or in 1984. The stipulated facts contain no evidence that when Lewis and Roca's attorney rendered the coverage opinion to Commercial Union in 1982, or when Maxon's trustee sued Commercial Union in 1984, Commercial Union knew or should have known that Lewis and Roca had negligently overlooked *Federal Insurance.* Furthermore, unlike *Kallof,* where the damage was immediate and readily apparent, here no appreciable, non-speculative harm or injury immediately flowed from the negligent advice. The "injury" is not the mere undetected existence of either a problem created by negligent legal advice or the continuance of such a problem. *See DeBoer,* 138 Ariz. at 170, 673 P.2d at 914. The threat of future harm from Lewis and Roca's negligence was not sufficient to commence the limitations period. *See id.* Thus, until Commercial Union knew, or in the exercise of reasonable diligence should have known, that it had suffered injury because of Lewis and Roca's negligent conduct, the cause of action against Lewis and Roca could not accrue. *See Lawhon,* 159 Ariz. at 181, 765 P.2d at 1005.

## B. Resolution of the Issue

Although the parties have focused their arguments on the date that Commercial Union suffered injury, we think that the controlling issue in this case is when Commercial Union became aware or should have become aware of the cause of its harm. This could not reasonably have been determined by Commercial Union until the trial court's denial of Commercial Union's motion for summary judgment. Because the trial court's ruling occurred less than two years before the date of the standstill agreement, we conclude that Commercial Union's lawsuit was timely.

Even after Lewis and Roca's negligence was discovered in August of 1987, the cause of action could not accrue until Commercial Union had reason to believe (1) that it had sustained injury, and (2) that such injury was

caused by Lewis and Roca's negligence. *See id.* at 183, 765 P.2d at 1007. By August of 1987, however, only Maxon's liability to Pruitt had been established. The coverage issue was an open question. Until Commercial Union learned that Pruitt's claim was covered under Commercial Union's policy with Maxon, Commercial Union could not reasonably have known the existence or source of its injury. In the early part of the coverage case, Commercial Union's attorney believed that *Federal Insurance* could be successfully distinguished because of different language in the Commercial Union policy. If that were true, Maxon was not entitled to liability coverage under Commercial Union's policy, and Maxon's trustee's lawsuit against Commercial Union would fail. Consequently, until the trial court's ruling on December 23, 1987, nothing in this record demonstrates that Commercial Union should have been aware that it had been injured by Lewis and Roca's negligent failure to discover *Federal Insurance*.

Again relying on *Kallof,* Lewis and Roca alternatively asserts that the cause of action accrued in 1987, when Lewis and Roca's negligence *caused* Commercial Union some damages in the form of defense costs in the coverage case. We conclude that Lewis and Roca's argument, however, is based on an erroneous premise: that Commercial Union knew or should have known that such defense costs were a proximate result of Lewis and Roca's negligence. Applying the discovery rule, we conclude that on these facts it was not at all certain in 1987 that Lewis and Roca's negligent research caused Commercial Union's defense costs.

We think that the reasoning of the Oregon Supreme Court in *United States National Bank v. Davies,* 274 Or. 663, 548 P.2d 966 (1976), is instructive on this point. Like this case, *Davies* involved a legal malpractice action arising from an attorney's advice to his client. There, the defendant advised the client to accept trust funds of the corporation in payment for the redemption of his corporate stock. The corporation later sued the client for return of the funds, alleging that the sale violated both the law and the client's fiduciary duties to the corporation. As in

this case, the lawsuit was settled before trial by the client's payment. The client's estate then sued his former attorneys for malpractice.

The client's former attorneys, in an argument much like the one made by Lewis and Roca here, asserted that the statute of limitations commenced to run either when the client was sued by the corporation or no later than when the client hired other counsel and could ascertain if the claim was valid. *Id.* 548 P.2d at 969. The Oregon Supreme Court disagreed. It observed that when the client incurred defense costs in the corporation's suit against him, "it could [not] yet be determined that [such expense] *was caused by* negligent advice by defendants." *Id.* The legal questions involved made it impossible to determine if the client was sued because of his original attorneys' bad advice or as a "result of a misapprehension" of the legal rights of the party who sued. *Id.* If the client had won the lawsuit, he "would not normally be in a position to claim that negligent advice" was a cause of his defense expenses. *Id.*

Lewis and Roca argues that because the Oregon Supreme Court distinguished *Davies* in *Jaquith v. Ferris,* 297 Or. 783, 687 P.2d 1083 (1984), as a "discovery" case, Commercial Union's reliance on that case is misplaced. We disagree. We held above that the discovery rule applies not only to discovery of negligence, but also to discovery of causation and damage. *See Lawhon,* 159 Ariz. at 182, 765 P.2d at 1006. According to *Jaquith, Davies* stands for the proposition that "a plaintiff, even though damaged, has no cause of action ... until the plaintiff becomes aware or should have become aware of the cause of his damage." 687 P.2d at 1084; *accord Bollam,* 730 P.2d at 545. This result essentially is the same result that we reached in *Lawhon.* Thus, we conclude that *Davies* is consistent with Arizona law, and we follow it here.

■ This record supports the conclusion that, at least for a time during the coverage suit, Commercial Union could not, by the exercise of reasonable diligence, discover the cause of its defense costs in the coverage suit. Such costs may have been the proxi-

mate result of Lewis and Roca's negligence, or they may have been the result of the trustee's filing of a non-meritorious lawsuit. In any event, the cause of action did not accrue until Commercial Union knew or should have known who and what caused the expenditure of attorney's fees in the coverage suit. *See Lawhon,* 159 Ariz. at 182, 765 P.2d at 1006; *Davies,* 548 P.2d at 969.[5]

Nevertheless, on December 23, 1987, when the trial court denied Commercial Union's motion for summary judgment, Commercial Union then had reason to believe that Lewis and Roca's negligent advice was the cause of Commercial Union's expenditure of defense costs. At this point, the trial court had specifically ruled that *Federal Insurance* was authoritative and could not be distinguished. Because Commercial Union knew or should have known after the court's ruling that it was Lewis and Roca's malpractice that likely caused Commercial Union's expenditure of defense costs in the coverage suit, the cause of action accrued and the limitations period commenced to run at that time.

### III. CONCLUSION

The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

JACOBSON, P.J., and CONTRERAS, J., concur.

---

**5.** We recognize that Division Two has taken a different approach in *Myers v. Wood,* 174 Ariz. 434, 850 P.2d 672 (App.1992). There, the court reasoned that applying the rule in *Kallof* would result in a "finding that failure to pursue the 1988 claim [for attorneys' fees] led to the loss of the 1990 claim [for loss of the balance of the purchase price]." *Id.* at 436, 850 P.2d at 674. Consequently, the court allowed the splitting of the cause of action, holding that the claim for attorneys' fees was time-barred, but the claim for the loss of the balance of the purchase price was not. *Id.* We decline to follow *Myers* for two reasons. First, the decision allows the splitting of a cause of action, which is not favored. *See* Ariz.R.Civ.P. 18; *Staffco, Inc. v. Maricopa Trad-*

*ing Co.,* 122 Ariz. 353, 357, 595 P.2d 31, 35 (1979) (stating that the main purpose of our civil procedure rules for joinder is to dispose of all claims in one action whenever possible); *Malta v. Phoenix Title & Trust Co.,* 76 Ariz. 116, 119, 259 P.2d 554, 557 (1953) ("A plaintiff is not permitted to split his claim and harass an adversary with more than one action for one wrong."); *Marshall v. Williams,* 128 Ariz. 511, 513, 627 P.2d 242, 244 (App.1981) (stating the "fundamental rule" against splitting a cause of action). Second, the court did not analyze the expenditure of attorneys' fees in the context of the discovery rule.

* Corcoran, J., of the Supreme Court, did not participate in the determination of this matter.