William H. McMANUS, an individual Plaintiff,

v.

AMERICAN EXPRESS TAX AND BUSINESS SERVICES, INC., a Minnesota corporation, and Melvin Tiensvold, C.P.A., an individual, Defendants.

No. CV–97–524PHX–DAE.

United States District Court, D. Arizona.

Sept. 8, 1999.

Peter John Lesser, Law Offices of Peter J. Lesser, Los Angeles, CA, for Plaintiff.

William C. Knoche, Joseph Scott Conlon, Hinshaw & Culbertson, Phoenix, AZ, Tanya J. Gisolfi, Hinshaw & Culbertson, Minneapolis, MN, for Defendants.

## ORDER GRANTING DEFENDANTS' AMENDED MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT; DISMISSING PLAINTIFF'S FIRST AMENDED COMPLAINT AND ACTION

DAVID ALAN EZRA, Chief Judge.

The court heard Defendants' Motion on August 18, 1999. Peter J. Lesser, Esq., appeared at the hearing on behalf of Plaintiff; Gregory J. Schaefer, Esq., appeared at the hearing on behalf of Defendants. After reviewing the motion and the supporting and opposing memoranda, the court GRANTS Defendants' Amended Motion to Dismiss or, Alternatively, for Summary Judgment and DISMISSES Plaintiff's First Amended Complaint and Action with prejudice.

### BACKGROUND

This action arises from Defendants American Express Tax and Business Services, Inc. ("American Express") and Melvin Tiensvold's [1] performance of accounting and litigation support services for Peak Beam Systems, Inc. ("Peak Beam"). Peak Beam is a California corporation engaged in the manufacture and sale of hand-held, high-intensity searchlights and other lighting fixtures.[2] Peak Beam's sole place of business is in Williams, Arizona.

---

1. At all relevant times, Melvin Tiensvold ("Tiensvold") was an agent and/or employee of American Express.

2. Peak Beam's principal product is a hand-held searchlight known as the "Maxa–Beam," reputedly the most powerful hand-held searchlight in existence.

The background of this action is best understood in the context of the parties' previous litigation. Robert L. Brunson and Sheryl L. Brunson ("the Brunsons") controlled Peak Beam and were its sole directors and officers from mid–1991 until August 1998. William H. McManus ("McManus"), through his company McManus Enterprises, was awarded a contract to provide the United States Navy with a new·high-intensity, hand-held searchlight for use on nuclear submarines and other vessels. In June 1988, McManus Enterprises entered into a written contract with Peak Beam pursuant to which Peak Beam agreed to manufacture the searchlight exclusively for McManus Enterprises. Contractual disputes soon arose. In June 1989, Peak Beam filed a lawsuit against McManus ("the federal action"). McManus asserted various counterclaims against Peak Beam. On October 24, 1996, a jury rendered verdicts in favor of McManus and against Peak Beam, in an amount exceeding $733,000. These verdicts are presently on appeal to the Ninth Circuit Court of Appeals. Approximately one week after the verdicts, the Brunsons filed a Chapter 11 Bankruptcy Petition for Peak Beam in the United States Bankruptcy Court for the District of Arizona ("the Bankruptcy Court").

After Peak Beam filed the federal action, but before the jury verdicts were rendered, McManus instituted a shareholder rights action. That action, filed on February 1, 1995 in California state court, and subsequently removed to the Bankruptcy Court, sought a judicial declaration (1) of the amount of Peak Beam common stock to which McManus was entitled, and (2) that he is the majority owner of Peak Beam. McManus' entitlement to Peak Beam's common stock arose from his ownership of Peak Beam's preferred stock.[3] On May 4, 1994, McManus demanded the conversion of his preferred stock into common stock. McManus' demand was triggered by a February 25, 1994 letter from Robert L. Brunson, as President of Peak Beam, demanding the redemption of McManus' preferred stock.

In order to calculate the redemption value, Peak Beam, through the Brunsons, hired American Express in March of 1994 to compile financial statements and to provide a business valuation for Peak Beam. American Express completed its compilation on August 23, 1994. On August 25 and 26, 1994, McManus and his accountant Charles J. Ciochetto, inspected Peak Beam's financial books and records at American Express' office in Prescott, Arizona.

McManus' shareholder rights action named the Brunsons, Peak Beam, and John Does 1–50 as defendants. American Express and Tiensvold were included in that lawsuit as Doe defendants, but later dismissed. Numerous allegations in the shareholder rights complaint refer to Peak Beam, the Brunsons and "their agents" or "their accountant". Essentially, McManus alleged that the defendants improperly overvalued Peak Beam in order to dilute his ownership of common stock and deprive him of his status as the majority stockholder. On July 13, 1998, the Bankruptcy Court determined that McManus was entitled to 35,059 shares of Peak Beam common stock, or 94.6% of the common stock, as of May 4, 1994. The Bankruptcy Court's decision is presently on appeal. During a September 11, 1998 meeting of the Peak Beam shareholders, McManus exercised his voting rights to appoint himself and Stephen S. Lister as the new directors and officers of Peak Beam. A court-appointed Bankruptcy Trustee is currently in control of Peak Beam.

The instant action, filed by McManus on March 13, 1997 and amended on October 13, 1998, alleges four causes of action against Defendants American Express and Tiensvold: (1) constructive fraud; (2) accounting malpractice; (3) conspiracy to

**3.** As of May 31, 1991, the Brunsons held all of Peak Beam's common stock, but McManus owned all of the corporation's preferred stock.

commit fraud; and (4) intentional interference with contractual relations and prospective advantage. On November 20, 1998, Defendants moved to dismiss McManus' First Amended Complaint ("FAC") or, alternatively, for summary judgment. Although both parties submitted materials outside the pleadings, namely, attorney correspondence and deposition testimony, the court need not consider these materials in order to reach its conclusions. Accordingly, the court will exclude these materials and review the instant motion as a Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## STANDARD OF REVIEW

A motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b)(6). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Terracom v. Valley Nat'l Bank,* 49 F.3d 555, 558 (9th Cir.1995) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Dismissal for failure to state a claim is a ruling on a question of law. *Parks Sch. of Bus., Inc., v. Symington,* 51 F.3d 1480, 1484 (9th Cir.1995). "The issue is not whether plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim." *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987). Review is limited to the contents of the complaint, *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754 (9th Cir.1994), including any attached exhibits, *Symington,* 51 F.3d at 1484. To the extent, however, that "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." Fed.R.Civ.P. 12(b); *Del Monte Dunes at Monterey, Ltd. v. City of Monterey,* 920 F.2d 1496, 1507 (9th Cir.1990).

Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the non-moving party. *Id.* From the facts alleged, the court must draw all reasonable inferences in favor of the nonmoving party. *Usher,* 828 F.2d at 561. "[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim." *McGlinchy v. Shell Chem. Co.,* 845 F.2d 802, 810 (9th Cir.1988). A court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg,* 18 F.3d at 754–55.

## DISCUSSION

### I. Statute of Limitations

Defendants argue that McManus' claims for accounting malpractice (Count 2) and intentional interference with contractual relations (Count 4) are barred by Arizona's two-year statute of limitations.[4] Arizona courts have uniformly held that professional malpractice/negligence claims are governed by the two-year statute of limitations set forth in Arizona Revised Statutes ("A.R.S.") § 12–542. *See, e.g., Sato v. Van Denburgh,* 123 Ariz. 225, 599 P.2d 181, 183 (1979) ("[T]he essence of a complaint for the negligent performance of professional services by an accountant sounds in tort."). Likewise, Section 12–542 also governs claims for wrongful interference with contract. *See, e.g., Clark v. AiResearch Mfg. Co. of Ariz.,* 138 Ariz. 240, 673 P.2d 984, 987 (Ct.App.1983).

Under Arizona law, the determination of when a cause of action for professional negligence accrues is governed by the discovery rule. *Sato,* 599 P.2d at 183; *Commercial Union Ins. Co. v. Lewis and Roca,* 183 Ariz. 250, 902 P.2d 1354, 1358 (Ct.App.1995). Pursuant to the discovery rule, the statute of limitations commences to run "when the plaintiff knows, or in the

---

4. Defendants concede that Counts 1 (constructive fraud) and 3 (conspiracy to commit fraud) are governed by the three-year statute of limitations for fraud, A.R.S. § 12–543(3).

exercise of reasonable diligence should have known, of the defendant's negligent conduct ... or when the plaintiff is first able to sue." *Sato*, 599 P.2d at 183.

■ According to Defendants, McManus actually knew of the alleged accounting malpractice no later than February 1, 1995 when he filed his shareholder rights action. The court agrees. American Express completed its compilation of Peak Beam's financial statements on August 23, 1994. McManus and his accountant Mr. Ciochetto received a copy of the statements when they inspected Peak Beam's financial records on August 25 and 26, 1994. By February 1, 1995, McManus believed that American Express and Tiensvold had engaged in improper accounting with respect to their compilation of Peak Beam's financial statements. For instance, the February 1, 1995 complaint alleged:

> 31. [T]he Brunsons, *their accountant* and other agents materially have falsified the books, records and tax returns of Peak Beam in order to: (i) deny [McManus'] status as the majority holder of the common stock of Peak Beam
> . . . .
> 33. [D]efendants and *their agents* intentionally have engaged in a series of false and fraudulent transactions aimed specifically at denying [McManus] his rightful percentage of Peak Beam common stock. For example, in his margin notes ... *accountant Tiensvold* writes: "need to issue stk [to the Brunsons] for patent; also bldg". This establishes that the Brunsons and *their agents* intended to manipulate the corporate records so as to dilute plaintiff's ownership of Peak Beam common stock . . . .
> 35. [McManus] is informed and believes, and based thereon alleges, that if the financial books and records of [Peak Beam] were prepared accurately and in accordance with Generally Accepted Accounting Principles, [McManus] would hold more than 51 percent of the Peak Beam common stock under the conversion formula.

McManus argues that his cause of action did not accrue until September 28, 1995, when accountant Tiensvold was deposed. McManus contends that he "first learned key facts regarding Tiensvold's critical role in the ongoing stock conversion matter." While McManus may have learned additional facts during Tiensvold's deposition, the law does not require that a plaintiff have actual knowledge of each and every fact regarding his claims before a cause of action accrues. The February 1, 1995 complaint demonstrates that McManus knew of the material facts giving rise to claims of accounting malpractice and intentional interference with contractual relations and prospective advantage on or before that date, as the accounting decisions challenged by McManus in that action are the same decisions challenged here. In fact, a close comparison of the February 1, 1995 complaint and the first amended complaint in this action reveals paragraph after paragraph copied verbatim.

For instance, although McManus claims to have first learned during Tiensvold's September 1995 deposition that Tiensvold was not licensed as a CPA in Arizona at the time he compiled accounting statements for Peak Beam, paragraph 28 of the February 1, 1995 complaint states that "neither Mr. Tiensvold nor any other member of the I.D.S. [American Express] office ... is presently licensed as a Certified Public Accountant in Arizona, or any other state." Likewise, McManus knew by February 1, 1995 that Defendants had not compiled Peak Beam's accounting statements in accordance with Generally Accepted Accounting Principles ("GAAP"), but had used an alternate method of accounting known as Other Comprehensive Bases of Accounting ("OCBA"). Finally, prior to February 1, 1995, McManus knew that Defendants had "falsified the books, records and tax returns of Peak Beam in order to ... deny plaintiff's status as the majority holder of the common stock ..." The court concludes that regardless of any additional information McManus may have subsequently learned during Tiensvold's

deposition, he knew all of the facts material to his claims for accounting malpractice and tortious interference no later than February 1, 1995. Thus, the court rejects McManus' argument that his causes of action did not begin to accrue until September 28, 1995.

Alternatively, McManus argues that the two-year statute of limitations did not begin to run until March 17, 1995, when he received a stock certificate for 294 shares, or 12.79%, of Peak Beam common stock. Prior to that time, McManus contends that his cause of action could not have accrued because he had not yet sustained appreciable or non-speculative damages. In *Commercial Union Insurance Co. v. Lewis and Roca*, 183 Ariz. 250, 902 P.2d 1354, 1357, the Arizona Court of Appeals held that implicit in the discovery rule is the requirement that a plaintiff also sustain "actual and appreciable" harm as a result of the defendant's negligence.

In *Commercial Union*, the law firm of Lewis and Roca provided a coverage opinion to Commercial Union ("CU"), on the basis of which CU denied coverage to its insured. The insured sued CU, alleging bad faith in the denial of coverage. The insured prevailed on a summary judgment motion, with the court relying on precedent that Lewis and Roca had overlooked in rendering its coverage opinion and then sought to distinguish in the context of the summary judgment motion. CU then sued Lewis and Roca, and Lewis and Roca sought summary judgment on statute of limitations grounds. The issue was when CU's malpractice claim against Lewis and Roca accrued. Had the court in the underlying bad faith action determined that the precedent was distinguishable, and granted CU summary judgment, CU would not have been harmed at all by Lewis and Roca's advice. Under those circumstances, the court determined that it was speculative and uncertain whether Lewis and Roca's advice had harmed CU when the coverage opinion was rendered, and that CU had suffered no harm until the precedent Lewis and Roca had overlooked in rendering its coverage opinion

was determined by the court in the underlying bad faith action to be controlling in ruling against CU. *Id.* at 1358. Thus, the court held that CU's legal malpractice cause of action did not accrue until its summary judgment motion was denied in the bad faith action. *Id.* at 1359.

McManus' reliance on *Commercial Union* confuses two concepts: the occurrence of harm and the extent of damages. While *Commercial Union* teaches that a cause of action does not accrue until actual harm is sustained, it also recognizes that "the cause of action arises ... before the client sustains all, or even the greater part, of the damages occasioned by [a defendant's] negligence." *Id.* at 1359 (citation omitted). In this case, while McManus may first have learned of the number of shares Peak Beam would tender to him on March 17, 1995, the number of shares goes only to the extent of his damages, not to whether he was damaged. As to whether he was damaged, he has continuously asserted since the February 1, 1995 shareholder rights action that he was damaged by being wrongfully deprived of his rightful position as Peak Beam's majority shareholder, as of May 4, 1994, when he demanded conversion of his preferred stock. This is the same harm alleged in the instant action. See First Amended and Supplemental Complaint, ¶ 84. Therefore, the court concludes that McManus' causes of action for professional negligence and tortious interference accrued no later than February 1, 1995, not March 17, 1995.

■ Finally, McManus briefly argues that Defendants' torts "were continuing ones which did not culminate, and therefore did not accrue, until the issuance of stock based upon Defendants' conduct." The cases cited by McManus are distinguishable. In *Garcia v. Sumrall*, 58 Ariz. 526, 121 P.2d 640 (1942), plaintiffs sued for damages for trespass. There, however, defendants' goats had continually grazed on plaintiffs' land over a period of years, continuing within the limitations period. In *Floyd v. Donahue*, 186 Ariz. 409, 923

P.2d 875 (Ct.App.1996), although plaintiff alleged years of continued sexual abuse, the court held the "continuing tort" rule did not apply although it also held her claims relating to acts of abuse that occurred within two years of filing of the action were not time barred. Here, unlike those cases, Defendants performed accounting services for Peak Beam between March and August 1994. No continuing tort arises from these facts.

Based on the foregoing analysis, the court concludes that McManus' causes of action for accounting malpractice and tortious interference accrued on February 1, 1995. Because the instant action was not filed until March 13, 1997, more than two years later, these two causes of action are barred by A.R.S. § 12–542.

## II. *Reliance*

█ Defendants contend that McManus' two remaining claims, constructive fraud and conspiracy to commit fraud, must also be dismissed because he has not adequately pleaded reliance. To establish constructive fraud, all elements of actual fraud except the element of intent must be established.[5] *See Tom Reed Gold Mines Co. v. United Eastern Mining Co.*, 39 Ariz. 533, 8 P.2d 449, 451 (1932) (holding that presence or absence of intent distinguishes "actual" from "constructive" fraud) (citation omitted). Likewise, because McManus has alleged a civil conspiracy between the Brunsons, American Express, and Tiensvold to commit fraud, he can recover on this claim only if he can prove that he was injured by fraud.

█ A fraud claim, under Arizona law, requires proof of nine elements: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in a manner reasonably con-

templated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the truth of the representation; (8) the right to rely on it; and (9) consequent and proximate injury. *See Echols v. Beauty Built Homes, Inc.*, 132 Ariz. 498, 647 P.2d 629, 631 (1982). Thus, under either a constructive fraud theory or a conspiracy to commit fraud theory, McManus must plead and prove that he relied on representations made by Defendants. Although Defendants dispute whether they made any representations at all, arguing instead that they merely compiled financial statements that contained representations of the Brunsons and Peak Beam, the court need not reach this issue as McManus' claims are otherwise deficient.

█ McManus' complaint alleges that he "actually and justifiably placed confidence in and relied upon the fidelity and integrity of Defendants." A mere conclusory allegation of reliance is not sufficient to defeat a motion to dismiss: the plaintiff must plead specific facts explaining how he relied on the representation and why that reliance was reasonable. *Ness v. Western Security Life Ins. Co.*, 174 Ariz. 497, 851 P.2d 122, 127 (Ct.App.1992) (holding that bare allegation that "Plaintiff relied on the representations ... [and the] reliance was reasonable" was inadequate conclusory pleading of reliance); *see In re Stac Electronics Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir.1996) (conclusory allegations insufficient to defeat motion to dismiss).

"Reliance might, for fraud purposes, be defined as a belief which motivates an act." *Berry v. Robotka*, 9 Ariz.App. 461, 453 P.2d 972, 979 (Ct.App.1969). Review of the complaint shows that McManus has not alleged a single concrete action or decision he claims to have made in reliance upon Defendants' compilation of Peak Beam's financial statements. Moreover,

---

5. In addition to the other elements of actual fraud, constructive fraud requires the existence of a fiduciary or confidential relationship. *In re McDonnell's Estate*, 65 Ariz. 248, 179 P.2d 238, 241 (1947). Although the par-

ties vigorously dispute whether such a relationship exists, the court need not resolve this dispute, as it concludes that McManus has not adequately pleaded the remaining elements of constructive fraud.

not only has McManus inadequately pleaded reliance, but the undisputed facts demonstrate that he did not rely on the accounting services provided by Defendants. Even before Defendants finished compiling Peak Beam's financial statements, McManus had hired his own accountant Mr. Ciochetto. Based, at least in part, on Mr. Ciochetto's opinion that Defendants employed faulty accounting, McManus filed his shareholder rights action. *See Ness,* 851 P.2d at 127 (absence of reliance shown where plaintiff consulted attorney and ultimately filed action). Under these facts, McManus cannot claim to have relied on Defendants' accounting.

Because the court concludes that McManus has not adequately pleaded, and cannot plead reliance, his complaint fails to state a claim for constructive fraud and for conspiracy to commit fraud. Given that the court has also concluded that McManus' claims for accounting malpractice and tortious interference are barred by the statute of limitations, the court GRANTS Defendants' Amended Motion to Dismiss or, Alternatively, for Summary Judgment and DISMISSES Plaintiff's First Amended Complaint and Action with prejudice.

### CONCLUSION

For the reasons stated above, the court GRANTS Defendants' Amended Motion to Dismiss or, Alternatively, for Summary Judgment and DISMISSES Plaintiff's First Amended Complaint and Action with prejudice.

IT IS SO ORDERED.