342 P.3d 1279

Miriam HAYENGA, Plaintiff/Appellant,

v.

Paul GILBERT and Jane Doe Gilbert, husband and wife; L. Richard Williams and Jane Doe Williams, husband and wife; Beus Gilbert PLLC, an Arizona professional limited liability company, Defendants/Appellees.

No. 1 CA–CV 13–0489.

Court of Appeals of Arizona, Division 1.

Feb. 12, 2015.

Leonard & Felker, P.L.C., By David J. Leonard, Tucson, Counsel for Plaintiff/Appellant.

Dickinson Wright PLLC, By Gary L. Birnbaum, David J. Ouimette, Phoenix, Counsel for Defendants/Appellees.

Presiding Judge PETER B. SWANN delivered the opinion of the court, in which Judge KENTON D. JONES and Judge MICHAEL J. BROWN joined.

## OPINION

SWANN, Judge:

¶ 1 In this case, we hold that a claim for legal malpractice arising out of the alleged failure to timely commence an action, or to join a party in an existing action, is subject to the accrual rule established by *Amfac Distribution Corp. v. Miller* ("*Amfac I*"), 138 Ariz. 155, 673 P.2d 795 (App.1983), and *Amfac Distribution Corp. v. Miller* ("*Amfac II*"),

138 Ariz. 152, 673 P.2d 792 (1983). Such conduct occurs "during the course of litigation" under *Amfac*, and a malpractice claim based on that conduct does not accrue until the underlying litigation is finally resolved by completion or waiver of the appellate process.

## FACTS [1] AND PROCEDURAL HISTORY

¶2 In 1997, Miriam Hayenga purchased a parcel of real property from Gosnell Builders Corporation of America ("Gosnell"). According to Hayenga, both Gosnell and the City of Phoenix told her before the purchase that the property's zoning allowed for the development of 120 dwelling units. But when she attempted to sell the property to Hilton Grand Vacations Company ("Hilton") in 2000, the City informed her that development on the property was limited to far fewer than 120 units, and the sale negotiations ceased.

¶3 In summer 2000, Hayenga spoke about the zoning issues with counsel from Beus Gilbert PLLC. According to Hayenga, Beus Gilbert advised her to retain different counsel to have the property rezoned and told her that the firm would thereafter pursue an action against Gosnell. Hayenga employed Withey Morris PLC to represent her in an application to amend the development restrictions on the property, and secured an amendment that allowed the development of 78 units on the property. In 2002, she sold the property to Paradigm Communities, Inc.

¶4 In 2003, Hayenga (represented by Beus Gilbert) brought an action against Gosnell for fraud, negligent misrepresentation, and consumer fraud based on Gosnell's presale representations regarding the property's development restrictions. The matter proceeded to a jury trial, and on August 2, 2007, the jury returned a verdict in favor of Gosnell. Gosnell thereafter applied for an award of attorney's fees and costs.

¶5 On October 11, 2007, Hayenga wrote a letter to Beus Gilbert expressing her dissatisfaction with the outcome of the trial. Explaining that she was "absolutely shocked" to have learned during the trial that City offi-cials admitted to mistakes, she questioned "why The City was not named in our original complaint," posited that Beus Gilbert "had a conflict in pursing any action against The City of Phoenix," and stated that she was "quickly drawing the conclusion that Beus Gilbert was negligent." She demanded that Beus Gilbert pay the damages she had sought against Gosnell, reimburse her for her costs and time, and pay any attorney's fees and costs awarded to Gosnell. Not counting the prospective fee and cost award, Hayenga's demand totaled approximately $1,890,000. Hayenga stated that if Beus Gilbert did not respond to the demand, she would "have no option but to pursue th[e] matter legally." Beus Gilbert replied to Hayenga's letter on October 22, 2007, denying any negligence and informing Hayenga that the firm intended to withdraw from its representation of her in the posttrial proceedings. Hayenga agreed to the withdrawal, and shortly thereafter contacted the law firm of Leonard & Felker PLC to discuss possible claims against Beus Gilbert.

¶6 The same day that Hayenga wrote to Beus Gilbert, she personally submitted a notice of claim to the City, alleging that she first learned that "the City, not Gosnell, made the mistakes" when City officials testified in the Gosnell litigation on July 26 and August 1, 2007. Hayenga demanded over $5,800,000 in damages from the City. The City responded by letter dated October 26, 2007, stating that it was unable to consider the claim because it was untimely under A.R.S. § 12-821.01.

¶7 On November 8, 2007, the court entered judgment against Hayenga and in favor of Gosnell for over $300,000 in attorney's fees and costs. The court granted Beus Gilbert's motion to withdraw the next week. Hayenga thereafter retained Massey & Finley PC to represent her in the Gosnell litigation and filed several post-judgment motions, including a motion for new trial. In the motion for new trial, Hayenga argued that she had been unfairly surprised at trial by testimony from Gosnell's principal describing his investigation of City records and his con-

---

1. We review the grant of summary judgment de novo, viewing the facts in the light most favor-able to Hayenga. *Andrews v. Blake,* 205 Ariz. 236, 240, ¶12, 69 P.3d 7, 11 (2003).

clusion that the City had acted improperly. The superior court denied the motion and Hayenga filed a notice of appeal. By April 2008, however, she satisfied the judgment and abandoned her appeal.

¶ 8 Meanwhile, in January 2008, Hayenga (represented by Massey & Finley), brought an action against the City for negligent misrepresentation, intentional misrepresentation, and fraudulent concealment. In her complaint, Hayenga alleged that the City had misrepresented the property's development restrictions before she purchased it, and had concealed an illegal assignment affecting the restrictions both before her purchase and when she was in resale negotiations with Hilton. In August 2008, the superior court entered summary judgment for the City on the misrepresentation claims, concluding that they were time-barred under the applicable statute of limitations and A.R.S. § 12–821.01. The parties eventually settled the remaining claim in December 2009.

¶ 9 On November 6, 2009, Hayenga brought a legal malpractice action against Beus Gilbert and its attorneys Paul Gilbert and L. Richard Williams (collectively, "Beus Gilbert"). She alleged, *inter alia*, that Beus Gilbert was liable for breach of fiduciary duty and negligence because it ignored and failed to disclose to her (1) her potential action against the City, (2) her obligations related to a timely pursuit of that action, (3) the risk she assumed by not making the City a party to the action against Gosnell, and (4) Gosnell's ability to defend itself by blaming the City.

¶ 10 Beus Gilbert moved for summary judgment, arguing that Hayenga's complaint was time-barred under the two-year limitations period prescribed by A.R.S. § 12–542. The motion argued that the malpractice claim accrued by the time Hayenga authored the letters to Beus Gilbert and the City in October 2007, more than two years before she filed the malpractice complaint. Hayenga argued in response that she was not actually injured until the conclusion of the Gosnell litigation in April 2008 or the conclusion of the City litigation in December 2009. The court granted Beus Gilbert's motion, reasoning that the alleged malpractice did not occur during the course of the Gosnell litigation and that the harm caused was ascertainable by October 2007. The court then entered a signed order dismissing all of Hayenga's claims with prejudice.

## DISCUSSION

¶ 11 Legal malpractice actions are subject to A.R.S. § 12–542, which provides that an action must be commenced within two years after the claim accrues. *Long v. Buckley*, 129 Ariz. 141, 143, 629 P.2d 557, 559 (App.1981). A legal malpractice claim accrues when the plaintiff "has sustained appreciable, non-speculative harm or damage as a result of such malpractice and ... knows, or in the exercise of reasonable diligence should know, that the harm or damage was a direct result of the attorney's negligence." *Comm. Union Ins. Co. v. Lewis & Roca*, 183 Ariz. 250, 252–53, 902 P.2d 1354, 1356–57 (App.1995).

¶ 12 Legal malpractice can occur in a wide variety of settings, and it can be difficult to determine when the harm malpractice causes becomes "non-speculative." Malpractice that occurs outside litigation may cause harm that is immediately ascertainable in some situations, but in others the harm or its cause may not reasonably be discovered until later.[2] Mere uncertainty regarding damages,

---

2. See *Toy v. Katz*, 192 Ariz. 73, 89, 961 P.2d 1021, 1037 (App.1997) (holding that legal malpractice claim against attorney who advised sellers in business-sale transaction did not accrue until sellers learned they could not enforce the contract); *Comm. Union*, 183 Ariz. at 257–58, 902 P.2d at 1361–62 (holding that legal malpractice claim against law firm that advised insurer to deny coverage, leading to insurer's expenditure of costs defending action brought by insured, did not accrue until insurer knew or should have known that costs were caused by negligent advice rather than by a frivolous claim); *Tullar v. Henderson*, 168 Ariz. 577, 579–80, 816 P.2d 234, 236–37 (App.1991) (holding that legal malpractice claim against attorney who advised seller in land transaction involving unsecured promissory note did not accrue until seller knew or should have known that note was unsecured and knew or should have known that buyer could not pay purchase price under terms of note).

however, will not delay accrual.[3]

¶ 13 In the litigation setting, though, harm generally becomes sufficiently certain only when the result of the litigation itself is final. Arizona has long followed the rule, established by *Amfac I* and *Amfac II*, that when malpractice "occurs during the course of litigation ... the injury or damaging effect is not ascertainable until the appellate process is completed or is waived by a failure to appeal." *Amfac II*, 138 Ariz. at 153–54, 673 P.2d at 793–94. The reason for this special rule is that "apparent damage may vanish with successful prosecution of an appeal and ultimate vindication of the attorney's conduct by an appellate court."[4] *Amfac I*, 138 Ariz. at 156, 673 P.2d at 796. Litigation malpractice claims accrue when the appellate process in the underlying litigation is completed by the issuance of a mandate, *Joel Erik Thompson, Ltd. v. Holder*, 192 Ariz. 348, 349, ¶ 2, 965 P.2d 82, 83 (App.1998), when the parties to the underlying litigation enter into a binding settlement agreement, *Althaus v. Cornelio*, 203 Ariz. 597, 600, ¶¶ 11–12, 58 P.3d 973, 976 (App.2002), or when the right to appeal is otherwise waived, *see Amfac II*, 138 Ariz. at 154, 673 P.2d at 794.

¶ 14 The central question in this appeal is whether the *Amfac* rule applies—that is, whether Hayenga's claims arose in the course of litigation or outside of it. Hayenga's complaint alleged that Beus Gilbert negligently disregarded her claims against the City and their potential effect on her claims against Gosnell, causing her to lose several of the claims against the City and causing her to lose the case against Gosnell. These allegations describe two distinct categories of malpractice: (1) the failure to preserve the misrepresentation claims against the City,[5] and (2) the failure to anticipate Gosnell's ability to rely on the City's conduct as a defense in the action against Gosnell. We hold that both categories of claims are governed by the *Amfac* rule. The failure to name or join a defendant in an action arises "during the course of litigation," and so does the failure to anticipate a named defendant's defense. Applying the *Amfac* rule, we conclude that the claim for malpractice arising from Beus Gilbert's failure to preserve the claims against the City accrued when Hayenga settled with the City in December 2009, and the claim for malpractice arising from Beus Gilbert's failure to anticipate Gosnell's defense accrued when Hayenga abandoned her appeal from the Gosnell judgment in

---

3. *See Best Choice Fund, LLC v. Low & Childers, P.C.*, 228 Ariz. 502, 508, 269 P.3d 678, 684 (App.2011) (holding that accrual of legal malpractice claim based on law firm's business formation, licensing, and regulatory compliance advice was not delayed by possibility that government entity that suspended plaintiff's certificate of authority would reverse its position); *Keonjian v. Olcott*, 216 Ariz. 563, 565, 566, ¶¶ 10, 13, 169 P.3d 927, 929, 930 (App.2008) (holding that plaintiff sustained harm under property deed and gift letter at time of execution, and potential recovery of damages against beneficiary of deed and letter had no bearing on accrual of legal malpractice claim against drafting attorney); *Comm. Union*, 183 Ariz. at 255, 902 P.2d at 1359 (holding that occurrence of harm and extent of damages are distinct concepts, and that a legal malpractice plaintiff need not have sustained the full extent of damages for the limitations period to commence); *Ariz. Mgmt. Corp. v. Kallof*, 142 Ariz. 64, 67–68, 688 P.2d 710, 713–14 (App.1983) (holding that legal malpractice plaintiff began to sustain harm upon execution of settlement agreement, and potential recovery against other party to agreement did not delay accrual of legal malpractice claim against drafting attorney).

4. The rule also encourages preservation of the attorney-client relationship by allowing a client to continue the underlying litigation without second-guessing her counsel or seeking a second opinion before her rights are fixed and she is sure of the negligence. *Amfac I*, 138 Ariz. at 157–58, 673 P.2d at 797–98. Further, the rule promotes judicial efficiency by avoiding concurrent prosecution of malpractice and underlying actions that are dependent on the same evidence. *Glaze v. Larsen*, 207 Ariz. 26, 30, ¶ 17, 83 P.3d 26, 30 (2004).

5. Beus Gilbert points out that Hayenga did not argue in the superior court that *Beus Gilbert* should have sued the City on her behalf, but that Beus Gilbert should have advised her about her claims against the City and Beus Gilbert's unwillingness to pursue them so that she could have retained *different counsel* to do so. The distinction is immaterial for purposes of this appeal. The salient allegation is that Beus Gilbert failed to take action to facilitate Hayenga's pursuit of her claims against the City.

April 2008. Her November 2009 malpractice action therefore was timely with respect to both claims.

## I. THE FAILURE TO PRESERVE HAYENGA'S CLAIMS AGAINST THE CITY AROSE "DURING THE COURSE OF LITIGATION" UNDER THE AMFAC RULE.

¶ 15 We first consider Hayenga's allegations that Beus Gilbert negligently failed to preserve her claims against the City and thereby diminished the value of her action against the City. We note that the parties disagree about whether the alleged negligence occurred before or after Hayenga sued Gosnell. Hayenga's malpractice complaint reasonably accommodates both characterizations: she alleged that Beus Gilbert failed to review City files when she first received Beus Gilbert's counsel regarding her potential claims in 2000, and she alleged that Beus Gilbert failed to review City files and did not join the City once the action against Gosnell was underway. *See* Ariz. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice."). Our analysis is the same under either characterization.

¶ 16 The issue we must decide is whether malpractice committed "during the course of litigation," *Amfac II*, 138 Ariz. at 153, 673 P.2d at 793, includes negligence that results in the loss of the opportunity to litigate. We conclude that it does. Contrary to Beus Gilbert's suggestion, the *Amfac* rule's application to "litigation" is not necessarily limited to conduct directed toward a named defendant in an ongoing case. Litigation is generally defined as a judicial or other similar proceeding, or as the process of carrying on such a proceeding. Black's Law Dictionary 952 (8th ed.2004) (defining "litigation" as "[t]he process of carrying on a lawsuit" or "[a] lawsuit itself"); *id.* at 905, 1475 (defining "lawsuit" as "[a]ny proceeding by a party or parties against another in a court of law"); *Cannon v. Hirsch Law Office*, 222 Ariz. 171,

177, ¶ 19, 213 P.3d 320, 326 (App.2009) (recognizing that proceedings before administrative agencies, arbitration panels, or claims commissions, and alternative dispute resolution proceedings, may constitute "litigation"). The "course of litigation" includes the process of preparing for litigation. *See* Restatement (Third) of the Law Governing Lawyers § 87(1) (2000) (explaining that work-product immunity protects material "prepared by a lawyer for litigation then in progress *or* in reasonable anticipation of future litigation" (emphasis added)). Accordingly, a negligent failure to timely institute proceedings against a potential defendant or to include that party in an ongoing action is conduct "during the course of litigation" under *Amfac*.

¶ 17 The same policies that support deferred accrual of a claim for malpractice committed in the handling of pending claims against a named defendant support deferred accrual of a claim for malpractice committed in anticipation of litigation against a potential defendant. In either circumstance, the apparent error and resultant damages may be eradicated if the litigation is allowed to run its course, and the opportunity for such cure promotes preservation of the attorney-client relationship and judicial efficiency. Of course, as *Amfac II* recognized, a putative malpractice plaintiff should not be forced to continue a frivolous action merely to preserve her malpractice claim—she may achieve final resolution either by exhaustion of the judicial process or by waiver. 138 Ariz. at 154, 673 P.2d at 794. Similarly, a plaintiff who alleges malpractice based on the failure to pursue litigation need not commence the underlying action (and logically may choose not to do so if she reasonably believes her opportunity to pursue the action has been irrevocably lost), though in such circumstances the malpractice defendant may assert as a defense the argument that the underlying action could have been successful.[6]

---

**6.** In *Cannon*, we held that the *Amfac* rule did not extend the accrual date of a legal malpractice claim that was based on a failure to timely object to the discharge of a bankruptcy debtor and commence adversary proceedings. 222 Ariz. at 180, ¶¶ 28–29, 213 P.3d at 329. *Cannon* com-

pared plaintiff's failure to commence adversarial proceedings in the bankruptcy court to "missing a statute of limitations that would initiate a civil action." *Id.* at ¶ 28, 213 P.3d at 329. There, however, the malpractice plaintiff did not attempt to remedy the error in the bankruptcy

¶ 18 Hayenga's October 2007 correspondence to Beus Gilbert and the City demonstrates that at that time she was aware she had a potential malpractice claim against Beus Gilbert based on its failure to pursue or properly advise her regarding potential claims against the City. She concurrently submitted a notice of claim to the City, and several months later filed a complaint against the City. Under the *Amfac* rule, Hayenga's claim for Beus Gilbert's malpractice in failing to preserve claims against the City did not accrue until the litigation against the City was finally resolved.

¶ 19 We disagree with Beus Gilbert's contention that the claims against the City were finally resolved by the City's denial of Hayenga's notice of claim as untimely. The City's response to the notice of claim merely reflected the position it intended to take in settlement negotiations and litigation; it did not resolve the question of whether Hayenga's claims against the City were actually time-barred. Nor did the superior court's order granting summary judgment for the City on the misrepresentation claims finally resolve the issue, because that order was not immediately appealable. The case against the City, and the effect of the alleged malpractice thereon with respect to Hayenga's loss of the misrepresentation claims on limitations grounds, was not finally resolved until December 2009, when the parties settled the fraudulent concealment claim and Hayenga waived the right to appeal. *See Althaus,* 203 Ariz. at 600, ¶¶ 11–12, 58 P.3d at 976. Because Hayenga's malpractice complaint actually preceded the final settlement by one month, her claim that Beus Gilbert diminished the value of her case against the City by negligently failing to preserve claims was not time-barred under A.R.S. § 12–542.[7]

## II. THE FAILURE TO ANTICIPATE GOSNELL'S DEFENSE TO LIABILITY AROSE "DURING THE COURSE OF LITIGATION" UNDER THE AMFAC RULE.

¶ 20 We next consider the timeliness of the malpractice complaint with respect to Hayenga's allegations that Beus Gilbert's disregard of the City's potential liability caused her to lose the case against Gosnell. This claim alleges an error made with respect to the manner in which Beus Gilbert handled the litigation against Gosnell.

¶ 21 Contrary to Beus Gilbert's contentions, the effect of this error could have been remedied by Hayenga's continued pursuit of the Gosnell case. Hayenga argued in her motion for new trial in the Gosnell case that she was unfairly surprised by evidence regarding the City's culpability. A successful appeal from the judgment for Gosnell would have given Hayenga a second chance to pursue her claims against Gosnell—this time with the knowledge that Gosnell could use the City's conduct as a defense. Armed with this intelligence, she would have had the opportunity to make different strategic decisions and possibly achieve a favorable outcome. Under *Amfac,* therefore, the claim of malpractice arising from Beus Gilbert's handling of the claims against Gosnell did not accrue until the Gosnell litigation was finally resolved by Hayenga's April 2008 abandonment of her appeal. *See Amfac II,* 138 Ariz. at 154, 673 P.2d at 794. Accordingly, the November 2009 malpractice claim was timely under A.R.S. § 12–542.

## CONCLUSION

¶ 22 We conclude that summary judgment on limitations grounds was unwarranted. We decline Beus Gilbert's invitation to affirm judgment in its favor based on its various

---

court. *See id.* at 174, ¶¶ 4–5, 213 P.3d at 323. Accordingly, *Cannon* merely illustrates the principle recognized in *Amfac II* that a malpractice plaintiff may waive the right to seek resolution of her harm and damages within the underlying litigation. Under *Cannon* and our holding today, a plaintiff with knowledge of negligence fatal to her putative claim may elect to proceed directly with her malpractice action and forgo deferred accrual under the *Amfac* rule.

7. Our decision should not be read to suggest that a plaintiff may preserve her malpractice claims indefinitely by delaying prosecution of the underlying action. Laches or other equitable defenses may bar a malpractice claim when the underlying action is not diligently prosecuted. Here, however, Hayenga diligently prosecuted her claims against the City.

other motions for partial summary judgment. Though these motions were briefed and argued in the superior court, the superior court did not rule on them.

¶ 23 We reverse the entry of summary judgment and remand for further proceedings.