816 P.2d 234

Thomas E. TULLAR and Richard Shear, Executors of the Estate of Bayard C. Tullar, deceased, and Teresa H. Tullar, Plaintiffs/Appellants,

v.

WALTER L. HENDERSON, P.C., an Arizona corporation; Green Valley Investment and Management, Inc., an Arizona corporation, Defendants/Appellees.

No. 2 CA–CV 90–0208.

Court of Appeals of Arizona, Division 2, Department A.

Feb. 21, 1991.

Reconsideration Denied April 3, 1991.

Review Denied Sept. 24, 1991.

Haralson, Kinerk & Morey, P.C. by Carter Morey, and Gregory G. Wasley, Tucson, for plaintiffs/appellants.

Mesch, Clark & Rothschild, P.C. by Tom R. Clark and Scott H. Gan, Tucson, for defendant/appellee Henderson.

Bury, Moeller, Humphrey & O'Meara by Gerald R. O'Meara, Tucson, for defendant/appellee Green Valley Inv.

## OPINION

LACAGNINA, Judge.

In this appeal from an adverse summary judgment dismissing their complaint for professional negligence, Thomas E. Tullar and Richard Shear, Executors of the Estate of Bayard C. Tullar, deceased, and Teresa H. Tullar (Tullars), argue that the trial court erroneously determined that the statute of limitations had expired prior to the filing of their complaint because even if they knew of the negligent conduct before the expiration of the statute, they suffered no actionable damages and, therefore, their cause of action had not accrued. Tullars argue that their complaint for professional negligence by their real estate broker and lawyer, filed within two years from the time Tullars suffered irrevocable damages, was timely. We agree and reverse the trial court judgment dismissing the complaint.

## FACTS

In 1984, Bayard C. and Teresa H. Tullar, as sellers, entered into an agreement with Biltmore Development Corporation (Biltmore) for the sale of 40 acres of land in Tubac, Arizona. Green Valley Investment and Management, Inc. (Green Valley) was Tullars' exclusive real estate agent for this transaction. The sale agreement provided for the execution of a note as partial payment of the purchase price. Neither the sale agreement nor the note provided for any security in the event of nonpayment, such as a mortgage or deed of trust on the land sold. In April 1986, before the closing of the sale, Tullars hired attorney Walter Henderson to review the transaction and assist at the closing. The closing was extended to December 1986 and, in accordance with the sale agreement, Biltmore executed an unsecured promissory note for $204,047.70, payable in installments. The first installment due June 12, 1987, was not timely paid. Tullars accepted a late payment of the first installment in August 1987. Biltmore failed to make the second payment due in December 1987. In early 1988, Tullars engaged another attorney and through his efforts learned that Biltmore's financial status, which resulted in its insolvency, made collection of the note futile. Tullars sued Green Valley and Henderson in August 1989, alleging negligent conduct which caused them to accept an unsecured note as partial payment for the sale.

## STATUTE OF LIMITATIONS

Based upon the record before it, the trial court concluded in part:

[T]he Court finds that, at the very latest, and giving the Plaintiffs every benefit of the doubt, there is no material fact issue that as of the June 12, 1987, default, Plaintiffs were injured by the lack of security and knew or should have known that they were unsecured.

We agree that the record supports this finding; however, before Tullars' cause of action for negligence could be brought, they had to suffer irrevocable damages. The Arizona Supreme Court's decision in *Amfac Distribution Corporation v. Miller*, 138 Ariz. 152, 673 P.2d 792 (1983), establishes this requirement.

Miller asserts that agents of Amfac knew or should have known of his alleged negligence at the time of the trial or at the time the judgment was entered. Thus, he concludes, the statute of limitations began to run at one of those times and the instant suit is barred. *However, this argument ignores the fact that Amfac had sustained no irrevocable damages and could not have sued at either of those times.* In both *Morrison [v. Acton,* 68 Ariz. 27, 198 P.2d 590 (1948)] and *Nielson [v. Arizona Title Insurance and Trust Co.,* 15 Ariz.App. 29, 485 P.2d 853 (1971)], the cases this

Court cited in ·*Sato [v. Van Denburgh*, 123 Ariz. 225, 599 P.2d 181 (1979)] for the point that a cause of action accrues when the plaintiff knew or reasonably should have known of the defendant's negligent conduct, there was no question that damages did exist prior to the plaintiff's discovery of the defendant's negligence. In that circumstance, the cause of action accrues with the plaintiff's discovery. However, as noted above, *even where a plaintiff has discovered actual negligence, if he has sustained no damages, he has no cause of action.* Only when he has sustained damages is he able to sue. Our decision today is not inconsistent with *Sato.*

*Id.* 138 Ariz. at 154, 673 P.2d at 794 (emphasis added).

The reference to *Sato, Morrison* and *Nielson* by the *Amfac* court answers the argument raised by Green Valley and Henderson that the holding in *Amfac* is limited only to cases of malpractice during the pendency of litigation. Green Valley and Henderson argue the holding in *Arizona Management Corp. v. Kallof,* 142 Ariz. 64, 688 P.2d 710 (App.1984), supports the judgment because the harm in *Kallof* occurred when the settlement agreement was negligently prepared. The harm to Tullars also occurred, they argue, when the sales agreement was executed without providing any security for the purchase price. We read *Kallof* as being consistent with *Amfac* and requiring ascertainable and nonspeculative damages before a cause of action for professional negligence accrues.

Furthermore, contrary to appellant's contention, these damages were ascertainable and not speculative, and thus appellant began to sustain actual damages from the day the agreement was entered into, June 6, 1968. From that day forward, the appellant lost the value that the exclusive lease arrangements would have given it had the settlement agreement been drafted so as to accomplish appellant's intent. Appellant in the suit filed in 1971 to enforce the settlement agreement estimated that its losses proximately caused by the Maloufs' failure to perform the exclusive lease ar-

rangements under the settlement agreement were at a rate of $5,000 per month for each month from and after June 6, 1968. Appellant also at that early date complained that the result of Maloufs' delay and refusal to execute the lease agreements providing for options to purchase prevented appellant from effecting a sale of the property to any purchaser, and thus appellant claimed other damages in the amount of $125,000 from and after June 6, 1968.

*Id.* 142 Ariz. at 67, 688 P.2d at 713.

█ Because it was obvious from the terms of the sale agreement and note that no security was provided or agreed to, Tullars knew or should have known that the note was unsecured at all times prior to default in the first payment. At the very least (as the trial court concluded) they knew in June 1987. However, Tullars suffered no damages on that date for which they could pursue a claim against Green Valley and Henderson. Biltmore, the debtor, could pay according to the terms of the note, and any alleged negligence resulting in loss of security would be nonactionable because any damages would be speculative, uncertain and contingent. The lack of security resulting from Green Valley's and Henderson's negligence caused Tullars no actionable damages until the note became uncollectable. In a case with similar facts, a bank sued its lawyer for preparing defective mortgages. The Louisiana Supreme Court held that the statute of limitations started to run against the attorney when bankruptcy proceedings were filed and not when the bank knew of the defects in the mortgages. In *Rayne State Bank & Trust Co. v. National Union Fire Ins. Co.,* 483 So.2d 987 (La.1986), the court stated:

Damage was not sustained by the bank by virtue of the mere existence of defects in the mortgages. At this point, the possibility of damage to the bank was merely speculative, uncertain and contingent on the possibility of an attack on the validity of the mortgages by a third party, or on the possibility that the debtors would declare bankruptcy. In the event that neither of these contingen-

**580**

cies occurred, and the debtors continued payment of their indebtedness, no harm at all would have resulted to the bank.

*Id.* at 995. *Accord, Ameraccount Club, Inc. v. Hill,* 617 S.W.2d 876 (Tenn.1981); *Bell v. Hummell & Pappas,* 136 Cal. App.3d 1009, 186 Cal.Rptr. 688 (1982).

The statute of limitations in this case started to run when Tullars knew or should have known Biltmore could not pay the purchase price according to the terms of the note. Tullars knew or should have known this fact when the December 1987 payment was not made or forthcoming in 1988. Tullars' complaint, filed in August 1989, was within the two-year period permitted by A.R.S. § 12–542.

Reversed and remanded.

LIVERMORE, P.J., and HATHAWAY, J., concur.