850 P.2d 672

C. Leroy MYERS and Marie A. Myers, husband and wife; Kenneth L. Myers; the Alpha Fund, a California limited partnership; Apple Enterprises, a California limited partnership; Centaur Financial, Inc., a California corporation; Intercapital Financial Services, Inc., a California corporation; Lane D. Lee; The Triax Fund, a California limited partnership; Peter or Bernice Wilkinson, as Trustee for U.D.T.; Stephen A. Wohler; CLM Management, Inc., an Arizona corporation, Plaintiffs/Appellants,

v.

Walter F. WOOD and Jane Doe Wood, husband and wife; Dennis A. Rosen and Jane Doe Rosen, husband and wife; Dennis A. Rosen, Ltd., an Arizona corporation, Defendants/Appellees.

No. 2 CA–CV 92–0146.

Court of Appeals of Arizona, Division 2, Department A.

Dec. 17, 1992.

Reconsideration Denied Feb. 3, 1993.

Review Denied May 4, 1993.*

---

* Feldman, C.J., of the Supreme Court, recused himself and did not participate in the determi-

Ulrich, Thompson & Kessler by Paul G. Ulrich and Gaye L. Gould, and Pasquale R. Cheche, Phoenix, for plaintiffs/appellants.

Broening Oberg & Woods by Neal B. Thomas, and Potts & Peterson by Richard G. Potts, Phoenix, for defendants/appellees.

nation of this matter.

## OPINION

LIVERMORE, Chief Judge.

Insofar as we can discern from an exceptionally sparse record, plaintiffs hired defendant Walter Wood to advise them concerning financial reorganization problems of Cochise Packers, Inc., a corporation owned by Leroy Myers, his family, and others. Wood, according to the complaint, arranged a sale of the stock of that company to National Fruit Corporation (NFC), a newly formed company owned by Richard Hickey and others. Wood represented that Hickey was wealthy and that Hickey and other owners would personally guarantee the NFC debt. NFC also purchased equipment, promising to pay off the debt on that equipment that had been personally guaranteed by Myers. When the transaction closed, the only guarantee obtained was from Hickey and it was relatively worthless because not signed by his wife and thus not binding on community assets. Myers later discovered that Hickey was another client of Wood and that he was not as financially solvent as Wood had represented him to be. By August 1988, therefore, Myers knew of a legal malpractice claim against Wood concerning misrepresentation of Hickey's financial ability and failure to protect by obtaining enforceable guarantees. No payments were yet due by NFC on the underlying transactions, however, and actual default did not occur until January 15, 1990. A malpractice claim was filed on January 10, 1992. Summary judgment was granted on the basis of the statute of limitations. We reverse.

The statute of limitations in a legal malpractice action begins to run only when a cause of action has accrued. That accrual requires not only negligence but damage. On the facts of this case, there was negligence at the outset in inducing Myers to enter into a transaction with a not solvent corporation unprotected by guarantees from solvent individuals. That negligence would cause no harm, however, if NFC in fact carried out its contractual undertakings. The harm arose, and the cause of action against Wood accrued, when NFC defaulted. *Tullar v. Walter L. Henderson, P.C.,* 168 Ariz. 577, 816 P.2d 234 (App.1991). Because that was less than two years before the complaint was filed, that complaint was timely.

Defendants seek to avoid this result by pointing to a lawsuit brought against Myers by Valley National Bank about two months after NFC purchased the stock of Cochise and the equipment for which Myers had personally guaranteed payment. That suit was on Myers' guarantee of the equipment debt. Myers retained an attorney who wrote to Wood, described the alleged malpractice in this case, and claimed that Wood had also failed to obtain a release for Myers on his equipment guarantee as he had promised to do. Thereafter an agreement was reached for NFC or Cochise to meet Myers' obligations and the Valley National Bank suit resulted in no loss to Myers. Defendants, however, contend that the lawsuit did damage Myers because it forced him to pay a lawyer, an element of damage that could have been recovered under the holding in *United States Fidelity & Guaranty Co. v. Frohmiller,* 71 Ariz. 377, 227 P.2d 1007 (1951). While we agree that there was some minor damage at that time, we do not believe it precludes this lawsuit. The result of obtaining legal counsel was for NFC and Cochise to perform their agreed contractual undertakings. Myers was able to avoid paying for the equipment. The claimed malpractice had still not resulted in the loss anticipated from the failure to obtain a release of liability.

Two additional reasons support this result. The only claim that could have been brought in 1988 was for attorneys' fees paid to avoid the Valley National Bank lawsuit. The record does not show what the amount of fees was. It could well be, therefore, that the amount claimed would be so low as not to warrant litigation. Second, sound legal policy ought to favor compromise and settlement over litigation. What Myers did in this case was to attempt to permit NFC to carry out its contractual obligations. Had NFC done so, Wood's malpractice would have caused no damage. We see no reason why, by attempting to avoid damage from malpractice, Myers should be found to have started the statute of limitations running.

**436**

This resolution of the case puts us at odds with the rule announced in *Budd v. Nixen,* 6 Cal.3d 195, 201, 98 Cal.Rptr. 849, 852, 491 P.2d 433, 436 (1971), and adopted in *Arizona Management Corp. v. Kallof,* 142 Ariz. 64, 688 P.2d 710 (App.1984):

> The cause of action arises, however, before the client sustains all, or even the greater part, of the damages occasioned by his attorney's negligence.... Any appreciable and actual harm flowing from the attorney's negligent conduct establishes a cause of action upon which the client may sue.

With respect, we do not see why this is the appropriate rule. On the facts of this case, alleged attorney malpractice in 1988 caused some damage in 1988 (perhaps as little as $1,000) and damage of $400,000 in 1990. Application of the *Budd* rule requires a finding that failure to pursue the 1988 claim led to the loss of the 1990 claim. To protect himself, Myers would have had to pursue the 1988 claim solely as a precaution against loss of the 1990 claim should it arise. Moreover, the 1988 claim, not being pursued out of a desire to recover that element of damage, would have to be held in abeyance until the potential damages from default subsequently accrued. There is nothing to be said for such a result. We prefer, therefore, to apply that body of law which allows the statute to run on damages already caused but not on those yet to arise. See *City of Tucson v. Apache Motors,* 74 Ariz. 98, 245 P.2d 255 (1952) (recurrent water damage from defectively designed water removal system); *Burns v. Jaquays Mining Corp.,* 156 Ariz. 375, 752 P.2d 28 (App.1987) (subsequent claim for damages not precluded by earlier claim arising from same tortious conduct); *Bruce v. Froeb,* 15 Ariz.App. 306, 488 P.2d 662 (1971) (statute running on installments of child support).

Reversed.

LACAGNINA, P.J., and ESPINOSA, J., concur.