7 P.3d 979

CDT, INC., an Arizona corporation,
Plaintiff/Appellant,

v.

ADDISON, ROBERTS & LUDWIG, C.P.A.,
P.C., an Arizona professional corpora-
tion; C. Wesley Addison and Susan U.
Philips, husband and wife; D. Jack Rob-
erts and Mary T. Roberts, husband and
wife; Christopher William Ludwig and
Lore L. Ludwig, husband and wife, De-
fendants/Appellees.

No. 2 CA–CV 99–0048.

Court of Appeals of Arizona,
Division 2, Department A.

Aug. 24, 2000.

Quarles & Brady L.L.P. By David A. Paige and C. Christine Burns, Phoenix, for Plaintiff/Appellant.

Fennemore Craig By Andrew M. Federhar and Theresa Dwyer, Tucson, for Defendants/Appellees.

## OPINION

PELANDER, Judge.

¶1 In this accounting malpractice action, appellant CDT, Inc., challenges the trial court's order granting summary judgment in favor of appellees Addison, Roberts & Ludwig, P.C., and several of its individual shareholders (collectively, ARL) on statute of limitations grounds. We reverse.

## BACKGROUND

¶2 Although most of the pertinent facts are essentially undisputed, we view the evidence and all reasonable inferences in the light most favorable to the party against whom summary judgment was entered. *Doe v. Roe*, 191 Ariz. 313, ¶14, 955 P.2d 951, ¶14 (1998); *Logerquist v. Danforth*, 188 Ariz. 16, 18, 932 P.2d 281, 283 (1996). CDT provides photocopying services in Arizona, California, Illinois, and Texas through the use of coin- or card-operated photocopy machines. In 1981, CDT hired Cox, an accounting firm, to provide accounting, auditing, and tax services, as well as management, financial, and tax advice, to CDT. In 1982, CDT expanded its business operations to California. From 1982 to 1990, Cox was responsible for ensuring that CDT was qualified to do business in California and operating in compliance with California tax laws. In late 1989 or early 1990, CDT terminated Cox's services and retained ARL, which provided accounting, auditing, and tax services for CDT's California activities through 1994.

¶3 In December 1994, the California State Board of Equalization (CSBE) [1] began a routine audit of CDT's California use tax account for the period October 1986 through December 1994. Based on its position that CDT was obligated to pay sales tax on its California copy machine sales during that period, CSBE audited CDT's records for one week in March 1995. At the conclusion of

---

1. The CSBE prescribes rules and regulations governing the taxation of possessory interests in California, determines tax liabilities and related assessments, and administers proceedings relating thereto. *See* Cal. Gov't Code § 15606 (West 2000).

the audit, a CSBE field investigator orally informed CDT that he "believed [it] had a substantial tax liability." The auditor also informed CDT that "he intended to recommend that [it] be assessed an intentional evasion penalty of 50% of the unpaid tax." In January 1996, the field investigator issued a written recommendation to CSBE, urging it to find CDT liable for unpaid taxes, interest, and penalties totaling over $3.2 million. CSBE formally adopted that recommendation and assessed that amount in a "Notice of Determination" issued to CDT in April 1996.

¶ 4 CDT contested the tax assessment through a series of administrative hearings.[2] In addition, in September 1996, CDT filed this action against Cox.[3] On July 9, 1997, CDT amended its complaint to add ARL as a defendant. As it had with Cox, CDT alleged claims for accounting malpractice, breach of fiduciary duty, negligent misrepresentation, and breach of contract against ARL.[4] ARL moved for partial summary judgment on the first three counts, contending the two-year statute of limitations in A.R.S. § 12–542 barred those claims. In granting the motion, the trial court reasoned:

> After the March 1995 audit by the CSBE, the plaintiff knew or should have known that the defendant was negligent in not detecting the plaintiff's failure to pay California sales tax for the period of October 1, 1986, through December 31, 1994. The plaintiff also had knowledge that it had suffered appreciable non-speculative damage as a result of the defendants' negligent conduct because of the auditor's March 1995 determination that the plaintiff had substantial sales tax liability and would likely face severe penalties. Whether the plaintiff would ultimately be legally required to pay this liability and the pre-

cise calculation of amounts due and owing is irrelevant to this Court's determination of the accrual of the plaintiff's cause of action.[5]

This appeal followed the trial court's denial of CDT's motion for reconsideration and entry of judgment in favor of ARL.

## DISCUSSION

■ ¶ 5 CDT raises an issue of first impression in this state: When does a cause of action accrue for accountant malpractice that allegedly causes an assessment of delinquent taxes, interest, and penalties against the taxpayer? In reviewing the grant of summary judgment, "[w]e must determine *de novo* whether there are any genuine issues of material fact and whether the trial court erred in applying the law," *Logerquist,* 188 Ariz. at 18, 932 P.2d at 283, mindful that "the statute of limitations defense is not favored." *Id.* at 22, 932 P.2d at 287.

■ ¶ 6 Section 12–542 requires certain actions to be "commenced and prosecuted within two years after the cause of action accrues, and not afterward." The statute applies to actions for accountant malpractice, breach of fiduciary duty, and negligent misrepresentation. *Resolution Trust Corp. v. Blasdell,* 930 F.Supp. 417, 427–28 (D.Ariz. 1994); *Sato v. Van Denburgh,* 123 Ariz. 225, 227, 599 P.2d 181, 183 (1979); *Hydroculture, Inc. v. Coopers & Lybrand,* 174 Ariz. 277, 284, 848 P.2d 856, 863 (1992). Under § 12–542, "[t]he limitations period begins to run upon accrual." *Doe,* 191 Ariz. 313, ¶ 40, 955 P.2d 951, ¶ 40; *see also Myers v. Wood,* 174 Ariz. 434, 435, 850 P.2d 672, 673 (1992). In this case, then, CDT's action against ARL is time barred if it accrued before July 9, 1995.

2. The record does not clearly reflect whether or when the hearings terminated or what their outcome was. According to CDT's disclosure statement, in June 1997, CDT reached a preliminary settlement with CSBE to pay $2.8 million, which did not include any evasion or fraud penalties. But in June 1998, approximately two weeks before the trial court granted ARL's motion, CDT's president avowed in an affidavit that the administrative hearings were "still pending and unresolved."

3. CDT's claims against Cox ultimately were dismissed with prejudice pursuant to a settlement agreement.

4. Pursuant to stipulation, CDT later added the ARL individual defendants.

5. The trial court later granted ARL's motion for partial summary judgment as to CDT's breach of contract claim. CDT does not challenge that ruling, which was not based on statute of limitations grounds.

¶ 7 Under the common law "discovery rule," "a cause of action does not accrue until the plaintiff knows or with reasonable diligence should know the facts underlying the cause." *Doe*, 191 Ariz. 313, ¶ 29, 955 P.2d 951, ¶ 29. *See also Gust, Rosenfeld & Henderson v. Prudential Ins. Co.*, 182 Ariz. 586, 588, 898 P.2d 964, 966 (1995); *Kowske v. Life Care Ctrs. of America, Inc.*, 176 Ariz. 535, 537, 863 P.2d 254, 256 (1993). "[A]ccrual requires not only negligence but damage." *Myers*, 174 Ariz. at 435, 850 P.2d at 673. In other words, "the limitations period does not commence until actionable negligence exists, that is, negligence that results in appreciable, non-speculative harm to the client." *Commercial Union Ins. Co. v. Lewis and Roca*, 183 Ariz. 250, 254, 902 P.2d 1354, 1358 (1995). *Cf.* W. Page Keeton et al., *Prosser and Keeton on The Law of Torts* § 30, at 165 (5th ed.1984).

¶ 8 ARL contends the trial court properly granted summary judgment because the limitations period began, at the latest, immediately after the CSBE field investigator informed CDT of its sales tax liability in March 1995. At that point, ARL argues, CDT "had begun to incur damage as a result of ARL's alleged negligence." In contrast, CDT argues that "the field investigator did not actually submit a written report until ten months later[,] a written recommendation that was subject to review and approval by the CSBE, which had the statutory authority to accept, reject or modify any submittal by a field investigator before deciding to make any type of delinquent tax assessment." Thus, CDT asserts, the field investigator's oral statement to CDT in March 1995 that it would face tax liability and possible penalties did not constitute "actual injury or damages from a delinquent tax liability assessment" that triggered the statute of limitations. Rather, CDT contends, the statute began to run, at the earliest, when CSBE issued its formal notice of determination in April 1996 because, until that time, CDT was not "legally required to pay any tax liability."

¶ 9 As it did in the trial court, CDT relies primarily on *Commercial Union* to support its argument. In that case, an insurance carrier filed a malpractice action against its former law firm based on faulty research and advice that had caused the carrier to deny coverage to its insured. The denial of coverage, in turn, had resulted in a subsequent action against the carrier for breach of contract and bad faith. In reversing a summary judgment for the defendant law firm, Division One of this court concluded that the carrier's malpractice action had not accrued until its motion for summary judgment in a separate coverage action had been denied. The court stated:

> [W]e hold that a cause of action for legal malpractice accrues when the client both: (1) has sustained appreciable, non-speculative harm or damage as a result of such malpractice and (2) knows, or in the exercise of reasonable diligence should know, that the harm or damage was a direct result of the attorney's negligence. Thus, we hold that the discovery rule applies not only to the discovery of negligence, but also to discovery of causation and damage.

*Commercial Union*, 183 Ariz. at 252–53, 902 P.2d at 1356–57. *See also Toy v. Katz*, 192 Ariz. 73, 88–89, 961 P.2d 1021, 1036–37 (1997).

¶ 10 Although the trial court did not cite or address *Commercial Union* in its ruling, we find it instructive and supportive of CDT's position. As the court in that case noted, a cause of action for attorney negligence, "transactional or otherwise," "does not accrue until the plaintiff discovers the negligence and sustains ascertainable harm as a result of that negligence." *Commercial Union*, 183 Ariz. at 256, 902 P.2d at 1360. In our view, that principle applies to any negligence claim against professionals, including accountants.

¶ 11 ARL correctly points out that accrual requires only actual or constructive knowledge of the fact of damage, rather than of the total extent or calculated amount of damage. *Id.* at 255, 902 P.2d at 1359. But, as the court in *Commercial Union* observed, "negligence that results in no immediate harm or damage delays accrual of the cause of action until such damage is sustained." *Id.* at 254, 902 P.2d at 1358. And, the damage must be "actual and appreciable," "non-speculative," and more than merely the

"threat of future harm." *Id.* at 254, 256, 902 P.2d at 1358, 1360.

¶ 12 In support of its motion for partial summary judgment, ARL filed an itemized statement of facts, which was based solely on the parties' verified disclosure statements. Although CDT filed its own, separate statement of facts, it did not dispute any of the facts that ARL had cited. ARL contends the following facts, extracted from the disclosure statements, are undisputed and defeat CDT's argument that it neither knew nor reasonably should have known of its tax liability before July 1995.

¶ 13 CDT knew in 1983 that California had changed its sales and use tax laws affecting vending machine sales by enacting a tax on the sale of photocopies from photocopy vending machines. CDT also knew that any contracts it entered into after July 1983 were subject to the California sales tax on gross revenue. Despite having received that information and a recommendation from a business associate in late 1983 to incorporate the new tax increase into its costs of operation, CDT did not obtain a seller's permit or commence payment of the sales tax. And, although CDT learned again in 1986 and 1988 of its need to obtain a seller's permit and to add the sales tax to customers' bills, and although CDT received the seller's permit application and copies of the sales tax requirements, CDT failed to file the application with CSBE or commence payment of the sales tax.

¶ 14 Based on its own disclosure statement, ARL's statement of facts further alleged that "CDT began charging and collecting sales taxes for its photocopying vending machines as early as February, 1988." According to ARL, CDT "collected in excess of $700,000 in sales tax, but never reported any taxable sales or paid any of the sales tax it had collected to the State of California. Instead, CDT recorded the sales tax it had collected as general revenue." Therefore, ARL contends, "the CSBE found that [CDT] knowingly failed to pay tax to the State of California." ARL further asserts that CDT "did not contest that it owed the State of California taxes which had accrued after September 30, 1991," but "argued only that it

should not owe taxes which had accrued before such date, and that it should not be charged a tax evasion penalty fee."

¶ 15 Resting on those factual allegations, ARL argues that, "[t]his Court should not permit a party, who admittedly collected tax at the proper rates from its customers and deposited that amount into its general revenue account, rather than report and remit that amount to the State, to avoid tax liability for its wrongdoing by suing its accountant for malpractice more than two years after the accountant prepares a return or conducts a review." That argument contains two major flaws. First, to the extent some of ARL's factual allegations are supported by the record properly before the trial court when it ruled, the facts bearing on CDT's actual or constructive knowledge of damage are disputed. For example, CDT's verified disclosure statement, on which ARL's statement of facts was partially based, set forth the following facts. From 1981 to 1990, CDT relied on Cox for tax service and advice, and Cox "was responsible for ensuring that CDT was qualified to do business in California and complied with California tax laws." Whenever CDT received a notice or correspondence from CSBE concerning use tax, sales tax, or seller's permit requirements, CDT forwarded the materials to Cox for its review and advice. According to CDT, "Cox never advised CDT that its California photocopy vending machine sales were then subject to sales tax or that CDT was obligated to obtain a Seller's Permit. Instead, CDT continued to file use tax returns and pay use tax on all of its California operations with Cox' knowledge and advice."

¶ 16 In its disclosure statement, CDT acknowledged that, in early 1988, "several accounts were set up to include sales tax, presumably based upon Cox' instructions to CDT's billing personnel." But, CDT explained:

At no time, however, did Cox ever advise CDT's shareholders, directors, officers, or management that CDT was obligated to obtain a Seller's Permit or that CDT's California vending machine sales were subject to sales tax. Further, Cox never advised anyone at CDT how to account for

and remit the collected sales tax. Instead, CDT continued to file use tax returns and pay use tax on all of its California operations with Cox' full knowledge and advice.

Throughout the time that Cox was being asked to advise CDT on California sales and use tax liability, ... Cox [was] also responsible for preparing compiled, reviewed, and audited financial statements for CDT.... Cox also prepared CDT's federal and state tax returns. In connection with the preparation of compiled, reviewed and audited financial statements, and federal and state tax returns for CDT, ... Cox never discovered, disclosed, or corrected CDT's failure to (i) properly account for the collected sales tax as a liability, (ii) obtain a Seller's Permit, and (iii) report and remit sales tax on its California photocopy vending machine sales to CSBE.

¶ 17 With respect to CDT's engagement of and relationship with ARL from 1990 through 1994, CDT's disclosure statement read, in part:

ARL represented that it was expert in multi-state accounting and tax issues and that it was knowledgeable about CDT's business and the industry. In addition, at the outset of the engagement, ARL advised CDT that Cox had not provided CDT with competent advice and service and that ARL would thoroughly review [Cox's] tax and accounting work and correct any deficiencies. In response, CDT instructed ARL to do whatever was necessary to put the company's accounting system in order and to implement the appropriate internal controls....

CDT's disclosure statement also asserted:

At no time during its engagement by CDT, however, did ARL ever discover or disclose the fact that CDT was subject to California sales tax, that CDT had failed to obtain a Seller's Permit or report and remit sales tax on its California photocopy vending machine sales. Further, at no time did ARL ever discover or disclose that CDT was collecting sales tax on certain accounts, but was failing to properly

account for the collected tax as a liability and remit it to CSBE.

¶ 18 In sum, many of the facts on which ARL relies are either disputed or relate more to liability issues of fault than to CDT's discovery of actual, appreciable, and nonspeculative damage. Second, ARL's argument is replete with factual allegations that ARL did not timely or properly present below, including materials filed after the trial court had ruled, and on which the trial court did not base its decision. Many of those factual allegations are contained in a "supplemental brief" that ARL filed on the Friday just before the following Monday's oral argument on its motion for partial summary judgment, after the facts bearing on that motion had been presented and after the issues had been joined and fully briefed. The trial court granted ARL's motion on the same day it was argued, apparently without relying on or specifically mentioning ARL's newly presented factual assertions.[6] In addition, although CDT opposed and moved to strike ARL's supplemental brief, the trial court did not rule on that motion.

¶ 19 We generally will affirm a summary judgment if it is correct on any ground. *Knauss v. DND Neffson Co.*, 192 Ariz. 192, 196, 963 P.2d 271, 275 (1997). But we only consider those arguments, theories, and facts properly presented to the court below. *See id.; Souza v. Fred Carries Contracts, Inc.*, 191 Ariz. 247, 254–55, 955 P.2d 3, 10–11 (1997); *cf. GM Dev. Corp. v. Community American Mortgage Corp.*, 165 Ariz. 1, 4–5, 795 P.2d 827, 830–31 (1990) (appellate court will not consider evidence not part of record or not considered by trial court before granting partial summary judgment). On this record, we cannot say that the "undisputed" facts entitled ARL to judgment as a matter of law based on its statute of limitations defense.

¶ 20 In evaluating whether CDT knew or reasonably should have known that it had suffered actual, appreciable, and nonspeculative damage before July 1995, we believe the

___

**6.** In its ruling, the trial court merely stated that it had "considered the pleadings, affidavits and evidence submitted in connection with the Motion for Partial Summary Judgment and Opposition Thereto."

California laws and procedures relating to tax audits and assessments are relevant. Under California law, CSBE issues a "notice of ... determination" after "comput[ing] and determin[ing]" tax liability, interest, and penalties. Cal. Rev. & Tax.Code §§ 6481 through 6486 (West 2000). It bases that determination on "the facts contained in the [tax] return or returns or upon the basis of any information within its possession or that may come into its possession." Rev.Code § 6481. Thereafter, "[a]ny person against whom a determination is made ... may petition for a redetermination within 30 days after" service of the notice of determination. Rev.Code § 6561. CSBE then must "reconsider the determination" and, upon request, "grant the person an oral hearing." Rev. Code § 6562. After the redetermination hearing, the board "may decrease or increase the amount of the determination before it becomes final." Rev.Code § 6563(a).

¶ 21 In view of that regulatory procedure, we cannot say that "appreciable, non-speculative harm or injury immediately flowed" from the CSBE field investigator's post-audit, oral statements to CDT in March 1995. *Commercial Union*, 183 Ariz. at 256, 902 P.2d at 1360. Contrary to the trial court's ruling, "[w]hether [CDT] would ultimately be legally required to pay [the tax] liability" is relevant in determining the accrual date. At the earliest, any definitive assessment of tax liability against CDT could be made only after CSBE had made its determination and computation. And, at the latest, any such assessment would abide CSBE's final decision after the redetermination process.

¶ 22 Most courts, and particularly those that apply the discovery rule in determining when a cause of action accrues, have adopted the date of formal tax assessment as the accrual date in cases similar to this. *See,*

*e.g., Thomas v. Cleary,* 768 P.2d 1090 (Alaska 1989); *Streib v. Veigel,* 109 Idaho 174, 706 P.2d 63 (1985); *Chisholm v. Scott,* 86 N.M. 707, 526 P.2d 1300 (1974); *Sladky v. Lomax,* 43 Ohio App.3d 4, 538 N.E.2d 1089 (1988); *Atkins v. Crosland,* 417 S.W.2d 150 (Tex. 1967); *Mills v. Garlow,* 768 P.2d 554 (Wyo. 1989). *See also Peat, Marwick, Mitchell & Co. v. Lane,* 565 So.2d 1323 (Fla.1990) (limitations period commenced when tax court entered its judgment); *Wall v. Lewis,* 366 N.W.2d 471 (N.D.1985) (actual damage that commenced statute of limitations occurred, at the latest, when IRS imposed tax assessment, thereby creating enforceable obligation against client). *See generally* Michael J. Weber, Annotation, *Application of Statute of Limitations to Actions for Breach of Duty in Performing Services of Public Accountant,* 7 A.L.R.5th 852 (1992).[7] For example, in an analogous case, the California Supreme Court concluded that the limitations period begins "at the time the I[nternal] R[evenue] S[ervice] actually *assesses* the tax deficiency." *International Engine Parts, Inc. v. Feddersen and Co.,* 9 Cal.4th 606, 38 Cal. Rptr.2d 150, 888 P.2d 1279, 1280 (1995).

¶ 23 The facts in *Feddersen* parallel the facts presented here. There, the plaintiffs, a corporation and its subsidiary corporation, were notified by the IRS in a June 1987 preliminary audit report that it planned to disqualify the subsidiary's status as a "domestic international stock corporation" (DISC) and impose tax deficiencies, interest, and penalties for the years 1983 and 1984. *Id.* at 1280–81. The IRS completed the audit in May 1988, "when the deficiency was assessed and taxes and penalties were imposed." *Id.* at 1281. At that time, the plaintiffs "acknowledg[ed] the deficiency assessment and agre[ed] to pay the taxes and penalties due." *Id.* at 1283.

---

7. We find the out-of-state cases that ARL cites unpersuasive or inapposite, either because the jurisdictions did not follow the discovery rule or because the decisions are factually distinguishable or at odds with *Commercial Union* and *Myers. See Davis v. Geo. S. Olive & Co.,* 731 F.Supp. 1380 (S.D.Ind.1990); *Ford's Inc. v. Russell Brown & Co.,* 299 Ark. 426, 773 S.W.2d 90 (1989); *Consolidated Management Services, Inc. v. Halligan,* 186 Ga.App. 621, 368 S.E.2d 148 (1988), *aff'd,* 258 Ga. 471, 369 S.E.2d 745

(1988); *Harvey v. Dixie Graphics, Inc.,* 593 So.2d 351 (La.1992); *Klosure v. Johnson Grant & Co.,* 229 Neb. 369, 427 N.W.2d 44 (1988); *Ackerman v. Price Waterhouse,* 84 N.Y.2d 535, 620 N.Y.S.2d 318, 644 N.E.2d 1009 (1994). *Cf. Godfrey v. Bick & Monte, P.C.,* 77 Or.App. 429, 713 P.2d 655 (1986) (limitations period commenced around time IRS formally notified plaintiff of tax liability, not upon final resolution of controversy by settlement).

¶ 24 As does § 12–542, California's limitations statute requires an action for accountant malpractice to be filed within two years of when the claim accrued. Cal. Civ. Proc. § 339(1) (West 2000); *Curtis v. Kellogg & Andelson,* 73 Cal.App.4th 492, 86 Cal.Rptr.2d 536, 541 (1999). The plaintiffs in *Feddersen* filed their action for accountant malpractice in May 1990, within two years of the completed audit but four years after an IRS agent had informed the plaintiffs that the subsidiary "probably would be disqualified as a DISC for failure to file the proper documentation relating to producer loans"; approximately four years after the subsidiary "was forced to withdraw its settlement offer in [an] unrelated lawsuit based on the disqualification of DISC status, and [after] the company's bank reduced its line of credit by $200,000 as a direct result of the predicted tax liability"; "nearly three years after the preliminary audit report was prepared"; and more than two years after the plaintiffs had paid "attorney fees for representation throughout the audit." 38 Cal.Rptr.2d 150, 888 P.2d at 1281.

¶ 25 As in Arizona, California law requires "actual injury to commence its limitations period." *Id.* at 1283. The court in *Feddersen* stated that, in cases such as this, "the question whether the taxpayer suffered actual injury as a result of the accountant's allegedly negligent preparation of the tax returns is contingent on the outcome of the audit." *Id.* at 1287. The court concluded that, "[a]lthough [the defendant's] alleged negligence may have been 'discovered' during the audit, such potential liability could not amount to actual harm until the date of the deficiency tax assessment or finality of the audit process." *Id.* As the court explained:

> It appears that Feddersen and the Court of Appeal confused the *determination* of tax liability with *finalization* of the audit process, at which point the tax deficiency is actually assessed. The deficiency assessment serves as a *finalization* of the audit process and the commencement of actual injury because it is the trigger that allows the IRS to collect amounts due and

the point at which the accountant's alleged negligence has caused harm to the taxpayer.

*Id.* at 1285.

¶ 26 Accordingly, the court rejected the defendant's arguments that the statute of limitations had commenced either in 1983 and 1984, when it filed the tax returns in question; in 1986, when the IRS agent first informed the plaintiffs that they might be subject to a deficiency assessment based on the negligent preparation of the 1983 and 1984 returns; or, at the latest, when the plaintiffs received the proposed audit report in June 1987. In reversing a summary judgment in favor of the defendant accounting firm, the court noted:

> Prior to the penalty assessment, the preliminary findings of the auditor as noted in the audit report are merely *proposed* findings, subject to review and negotiation. We are persuaded by decisions of the Court of Appeal, the majority of sister state jurisdictions, and the federal circuit courts, that actual harm occurs on the date the tax deficiency is assessed.

*Id.* at 1280.

¶ 27 According to the court, that bright line rule "both conserves judicial resources and avoids forcing the client to sue the allegedly negligent accountant for malpractice while the audit is pending," *id.* at 1287, and "when actual injury is still speculative and deficiency assessment uncertain." *Id.* at 1288. As the court in *Feddersen* stated:

> Obviously in some cases injury will be clear before the notice of deficiency is given to the taxpayer. But uniformity in application serves a more important function when interpreting statutes of limitation than does the identification of the precise point at which some harm might be said to have occurred, even if negative collateral consequences might arise from the *tentative* assessment of additional tax liability.

*Id.* Because we find the conclusion and reasoning of *Feddersen* persuasive and applicable here, we adopt it.[8]

8. We find no merit to ARL's suggestion, based on

a concurring opinion in *Jordache Enterprises,*

¶ 28 ARL nonetheless points out that, under California law, liability for unpaid taxes, interest, and penalties "runs from the date the tax becomes due, as prescribed by law, not from the date the taxpayer ultimately pays the tax or is fined for failure to pay the tax." *See* Cal. Rev. & Tax.Code §§ 6511, 6513, and 6514 (West 2000). And, as ARL correctly notes, Arizona law does not require "a finite calculation of damages for the limitations period to begin to run." Under California's statutory system, however, CSBE does not merely calculate tax liability, but rather "determin[es]" it as well. Cal. Rev. & Tax.Code §§ 6481, 6486. Tax liability arises only when the taxing authority makes a deficiency determination, even assuming back taxes were unpaid. *See Wall,* 366 N.W.2d at 473 (IRS's imposition of tax assessment creates enforceable obligation against client). Thus, unless and until CSBE formally assessed tax liability, CDT had neither actual nor constructive knowledge of actual, appreciable, and nonspeculative damage.

¶ 29 ARL further contends that CDT's "expenditure of attorneys' fees" to investigate its potential liability after the March 1995 audit necessarily "constitutes legally cognizable damages for purposes of the accrual of the statute of limitations." We disagree. Under circumstances comparable to those presented here, this court stated in *Myers* that the "minor damage" of retaining and paying an attorney, although clearly related to the subsequent malpractice action, did not cause the action to accrue at that time. 174 Ariz. at 435, 850 P.2d at 673 (that plaintiff had to retain attorney in lawsuit that resulted from former attorney's misrepresentation in sale of plaintiff's company did not trigger statute of limitations when default on loan had not yet occurred, amount of attorney's fees was possibly too low to warrant litigation, and lawsuit settled). *Cf. Commercial Union,* 183 Ariz. at 257, 902 P.2d at 1361 (carrier's payment of defense costs in coverage case did not trigger statute of limitations in malpractice case, when such costs might have resulted from either law firm's negligence or third party's filing of nonmeritorious action against carrier).

¶ 30 Finally, ARL's reliance on the three cases that the trial court cited in its ruling is misplaced. In *Arizona Management Corp. v. Kallof,* 142 Ariz. 64, 67, 688 P.2d 710, 713 (1984), ARL's primary authority, the court concluded that a cause of action for attorney malpractice based on a defective settlement agreement he had drafted accrued "on the date the settlement agreement was entered into," not later when the validity of an underlying lease agreement was "judicially established." As the court in *Commercial Union* pointed out, however, the plaintiff's damage in *Kallof* "was not only immediate and appreciable, it was 'readily apparent' " before the litigation. *Commercial Union,* 183 Ariz. at 256, 902 P.2d at 1360, *quoting Kallof,* 142 Ariz. at 68, 688 P.2d at 714. We cannot say the same about any damage that allegedly flowed from the CSBE field investigator's oral statement to CDT in March 1995. The court in *Commercial Union* also expressly rejected the statement in *Kallof* that discovery of actual, appreciable damage is required only in cases involving malpractice in the course of litigation. 183 Ariz. at 256, 902 P.2d at 1360. In addition, in *Myers,* this court questioned *Kallof*'s notion that *any* actual and appreciable harm caused by an attorney's negligence will necessarily start the limitations clock and instead applied the principle that "the statute [begins] to run on damages already caused but not on those yet to arise." 174 Ariz. at 436, 850 P.2d at 674.

¶ 31 *Kowske* and *Sato,* on which ARL also relies, primarily addressed the question of whether and when the plaintiff had actual or constructive knowledge of the defendant's alleged negligence, rather than of some recoverable damage caused by such negligence. In *Kowske,* we merely held that the limitations period is not "tolled until plaintiffs' counsel secures an expert opinion of [medical] malpractice." 176 Ariz. at 536, 863 P.2d

---

*Inc. v. Brobeck, Phleger & Harrison,* 18 Cal.4th 739, 76 Cal.Rptr.2d 749, 958 P.2d 1062, 1080–81 (1998), that the California court has questioned *Feddersen* or intends to overrule it. Indeed, the court in *Jordache* stated that, although *Feddersen*

does not apply to legal malpractice actions, which are governed by a separate limitations statute, it had no reason "to reexamine *Feddersen* 's rationale or rule." *Id.* at 1079 n. 10.

at 255. In *Sato*, our supreme court stated that a cause of action accrues when the plaintiff has actual or constructive knowledge of the defendant's "negligent conduct," "or when the plaintiff is first able to sue." 123 Ariz. at 227, 599 P.2d at 183. The court later distinguished *Sato*, however, and held that "actual injury or damages must be sustained before a cause of action in negligence is generated." *Amfac Distrib. Corp. v. Miller*, 138 Ariz. 152, 153, 673 P.2d 792, 793 (1983). In sum, none of the Arizona cases that ARL cites supports summary judgment here.

## CONCLUSION

¶ 32 We hold that CDT's cause of action against ARL accrued in April 1996, when CSBE issued its notice of determination. CDT timely filed the action against ARL

within two years of that date.[9] The trial court, therefore, erred in granting summary judgment on the basis that CDT's cause of action against ARL was time-barred because it had accrued at the time of the field investigator's March 1995 determination. Accordingly, we reverse the judgment and remand the case for further proceedings.

CONCURRING: M. JAN FLÓREZ, Judge, and WILLIAM E. DRUKE, Judge.

---

9. ARL contends that, because CDT's petition for redetermination "did not request the CSBE to extinguish [CDT's] tax liability ... [but] merely requested a revised determination of tax liability," CDT's filing of the petition could not delay the accrual of the cause of action. In view of our conclusion that CDT timely filed the action within two years of CSBE's notice of determination, however, we do not address that argument. And, having adopted the *Feddersen* rationale, we reject CDT's alternative contention that its cause of action against ARL accrued only after CDT had exhausted its administrative review rights, that is, at the conclusion of the redetermination hearing.